IN THE UNITED STATES DISTRICT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

RECEIVED

2006 DEC 22  P 3: 45

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

| | | |
|---|---|---|
| PROFESSIONAL FACILITIES MANAGEMENT, INC. | ) ) ) | |
| Plaintiff | ) ) | Case No. 2:06CV1136 - MHT |
| v. | ) ) ) | |
| | ) | |
| EMCOR FACILITIES SERVICES INC.; and A, B, and C, as fictitious Parties | ) ) ) | |
| Defendants. | ) ) ) | |

## NOTICE OF REMOVAL TO THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA

Defendant Emcor Facilities Services, Inc. ("Emcor"), pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, hereby removes the action entitled *Professional Facilities Management, Inc. v. Emcor Facilities Services, Inc.*, Civil Action No. CV-2006-900134, from the Circuit Court of Montgomery County, Alabama to the United States District Court for the Middle District of Alabama. As grounds for removal, Defendant states as follows:

1.    On November 17, 2006, Plaintiff filed its Complaint in  the  Circuit  Court  of Montgomery County, Alabama, in the above referenced action (the "State Court Action").

2.    A civil summons and the Complaint in the State Court Action were served on Emcor on December 6, 2006, via certified mail. A true and correct copy of the Complaint and summons received by Emcor are attached hereto as Exhibit "A."

3.    Emcor has not yet filed its answer or responsive pleadings in the State Court Action. In filing this Notice of Removal, Emcor does not waive any available defense or counterclaim.

4.    Plaintiff avers in its Complaint that its "principal place of business [is] located at 4164 Troy Highway, Montgomery, Alabama 36116." *See* Exhibit "A", Paragraph 1. Attached as Exhibit "B" is a true and accurate copy of the Alabama Secretary of State's Corporate Details internet page, which identifies Plaintiff as a domestic corporation.

5.    Defendant Emcor is a corporation organized and existing under the laws of the State of Connecticut. *See* Exhibit "C", Affidavit of Emcor's Senior Vice President Kevin Craig, Paragraph 1. As such, complete diversity exists between the parties to this action.

6.    This cause of action arises out of Plaintiff's failure to properly perform its obligations under an agreement with Defendant to provide cleaning services for the benefit of over one thousand (1000) Branch Banking & Trust ("BB&T") facilities in over ten (10) states, as well as the District of Columbia. *See* Exhibit "C" Paragraphs 2 through 8; Exhibit "A" Paragraph 6.

7.    Plaintiff's agreement with Defendant conditioned payment upon the actual amount of cleanable square feet for these BB&T facilities. *See* Exhibit "C", Paragraph 3.

8.    As part of this agreement, Plaintiff was required to measure and verify the actual cleanable square footage of the BB&T facilities in order to correctly invoice the work performed. Plaintiff failed to adhere to its agreement. *See* Exhibit "C", Paragraph 4.

9.    Plaintiff over billed Emcor, incorrectly represented the amount of work it performed under the agreement, provided substandard labor, and otherwise provided defective work, which caused Emcor harm. See Exhibit "C", Paragraph 5.

10.    As a direct result of Plaintiff's failure to accurately represent the amount of cleanable square footage, BB&T instructed Defendant Emcor to adjust Plaintiff's billings to accurately reflect the actual amount of cleanable square footage. This resulted in reduction of Plaintiff's claimed entitlement to payment in excess of $150,000.00. See Exhibit "C" Paragraph 6.

11.    In Count I of the Complaint, Plaintiff contends that Defendant Emcor "withheld payment for a portion of [cleaning] services" and further that "[Emcor] owes [Plaintiff] payment for work completed." See Exhibit "A", Paragraphs 36 and 37.

12.    Defendant Emcor disputes Plaintiff's allegations and denies that Plaintiff is entitled to any relief. These facts notwithstanding, Defendant's adjustment of Plaintiff's billings to properly reflect the actual amount of square footage cleaned by Plaintiff, resulted in a reduction of Plaintiff's claimed entitlement to payment in excess of $150,000.00. *See* Exhibit "C" Paragraph 8.

13.    Thus, this Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because this is a civil action between citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interests and costs. This action may therefore be removed to this Court by Defendant Emcor pursuant to 28 U.S.C. § 1441.

14.    This action is not a "nonremovable action" as defined and set forth in 28 U.S.C. § 1445.

15.    This Notice of Removal is timely filed pursuant to 28 U.S.C. § 1446(b) because it is filed within thirty (30) days of Defendant's receipt of the Complaint on December 6, 2006, and within one (1) year of the commencement of the action by the Plaintiff on November 17, 2006.

16.    Pursuant to 28 U.S.C. § 1446(d), written notice of the filing of this Notice of Removal will be given to Plaintiff, by and through its counsel of record in the State Court Action.  Also, pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal will be filed with the Clerk of the Circuit Court of Montgomery County, State of Alabama, the court in which the State Court Action was filed.

17.    All papers served on Defendant in the State Court Action at the time of this removal, consisting of the Complaint and civil summons, are attached pursuant to 28 U.S.C. § 1446(a). *See* Exhibit "A".

18.    Pursuant to M.D. Ala LR 3.1, a completed civil cover sheet (Form JS-44) has been completed and filed with the Clerk of Court by Defendant contemporaneously with the filing of this Notice of Removal.

JACK OWEN  (ASB-4805-N66C)
Attorney for Defendant
Emcor Facilities Services, Inc.

OF COUNSEL:
BALL, BALL, MATTHEWS & NOVAK, P.A.
Post Office Box 2148
Montgomery, Alabama  36102-2148
(334) 387-7680
(334) 387-3222 (Fax)
Email: CCOWEN@BALL-BALL.COM

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have served a copy of the foregoing document upon the following by placing same in the U.S. Mail, postage prepaid and properly addressed as noted below:

Dated: December 22, 2006

_____
OF COUNSEL

Mr. Rhon E. Jones
Ms. Scarlette M. Tuley
BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.
P.O. Box 4160
Montgomery, AL 36103-4160

# EXHIBIT A

12/07/2006 10:11 FAX  2038497880          EMCOR GROUP INC.                          ☑002/013

| State of Alabama<br>Unified Judicial System<br>Form C-34  Rev 6/88 | **SUMMONS**<br>- CIVIL - | Case Number:<br>03-CV-2006-900134.00 |
| --- | --- | --- |

**IN THE CIVIL COURT OF MONTGOMERY, ALABAMA**

**PROFESSIONAL FACILITIES MANAGEMENT, INC. v. EMCOR FACILITIES SERVICES, INC.**

NOTICE TO  EMCOR FACILITIES SERVICES, INC., C/O WILLIAM A. RODGERS 320 23RD STREET SOUTH,

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF OR PLAINTIFF'S ATTORNEY SCARLETTE TULEY
WHOSE ADDRESS IS POST OFFICE BOX 4160, MONTGOMERY AL, 36103

THE ANSWER MUST BE MAILED WITHIN 30 DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.
TO ANY SHERIFF OR ANY PERSONNEL AUTHORIZED by the Alabama Rules of the Civil Procedure:

☐ You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant

☑ Service by certified mail of this summons is initiated upon the written request of      PROFESSIONAL FACILITIES
   pursuant to the Alabama Rules of the Civil Procedure                                    MANAGEMENT, INC.

| 11/17/2006 10:34:44 AM | /s MELISSA RITTENOUR | /s/ |
| --- | --- | --- |
| Date | Clerk/Register | By |

☑ Certified mail is hereby requested      /s SCARLETTE TULEY
                                          Plaintiff's/Attorney's Signature

RETURN ON SERVICE:

☐ Return receipt of certified mail received in this office on _____

☐ I certify that I personally delivered a copy of the Summons and Complaint to _____

_____ in _____ County, Alabama on _____

Date                    Server's Signature

**EXHIBIT  A**



IN THE CIRCUIT COURT OF
MONTGOMERY COUNTY, ALABAMA

| | |
|---|---|
| PROFESSIONAL FACILITIES MANAGEMENT, INC., | §<br>§<br>§ |
| Plaintiffs, | §<br>§ |
| v. | §<br>§ |
| EMCOR FACILITIES SERVICES, INC.; and A, B, and C, as fictitious parties who are those persons, corporations, partnerships or entities who acted either as principal or agent, for or in concert with the other named Defendants and/or whose acts caused or contributed to the  damages sustained by the Plaintiff, whose identities are unknown to Plaintiff, but which will be substituted by amendment when ascertained; | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |
| Defendants. | §<br>§ |

CIVIL ACTION NO: CV- 2006-900134

**JURY TRIAL DEMANDED**

## COMPLAINT

1.    Plaintiff Professional Facilities Management, Inc. has its principal place of business located at 4164 Troy Highway, Montgomery, Alabama 36116.

2.    EMCOR Facilities Services, Inc. has its principal place of business in Arlington, Virginia.

3.    The fictitious defendants A, B, and C are those persons, corporations, partnerships or entities who acted either as principal or agent, for or in concert with the other named Defendant and/or whose acts caused or contributed to the damages sustained by the Plaintiff, whose identities are unknown to Plaintiff, but which will be substituted by amendment when ascertained.

4.    At all times material hereto EMCOR Facilities Services, Inc. (EFS) negotiated with Professional Facilities Management, Inc. (PFMI) over the telephone to PFMI in Montgomery, Alabama.  All payments from EFS were sent to PFMI in Montgomery, Alabama.  Representatives of EFS came to Montgomery, Alabama to conduct business with PFMI.

5.    Venue is proper in Montgomery, Alabama.

### STATEMENT OF FACTS

6.    Branch Banking & Trust (BB&T) contracted with EFS to provide facility management for its branch banks located in several states.

7.    As part of its facility management EFS was to obtain janitorial services for those branches.

8.    On or about March 17, 2005, EFS sent out a bid packet for janitorial work to be done at BB&T branch facilities in several states including Alabama.

9.    That bid packet contained a list of the square footage at each location to be cleaned.

10.    Relying on the square footage numbers contained in the bid packet, PFMI bid on the BB&T services contract.

11.    On or about July 12, 2005, EFS accepted PFMI's bid and they entered into a contract for services.  On or about July 13, 2005 EFS and PFMI executed a letter of intent stating in pertinent part that PFMI would begin to transition its services beginning July 12, 2005 with full implementation by September 6, 2005.

12.    The letter of intent also allowed for time for both parties to negotiate a mutually satisfactory definitive contractor agreement based on PFMI's proposed scope and pricing as outlined in their bid.

13.    PFMI discovered in its due diligence that BB&T wanted to remove the dumpsters from many branch locations.  This left PFMI with the task of removing trash and garbage from the locations and hauling it to a suitable disposal site, thus increasing the labor costs associated with those branches.

14.    EFS acknowledged that trash disposal would have to be paid for separately and asked PFMI to present bills for the disposal.  To date those bills have not been paid.

15.    During this negotiation period both parties understood that some adjustments to the cleanable square footage would by made.

16.    During the first ninety (90) days of the service PFMI, pursuant to the parties agreement, conducted measurements of many of the BB&T branch locations. Those measurements were provided to EFS.

17.    After the letter of intent was entered PFMI and EFS began in earnest to negotiate a final contactor agreement.

18.    During this time, PFMI began to provide janitorial services at the BB&T branch banks according to the square footage as provided them by EFS.

19.    During the months that the contract was being negotiated between PFMI and EFS, EFS began to give PFMI new square footage numbers for the facilities.

20.    Eventually BB&T provided EFS numbers that were approximately 15% less than the total original square footage provided to PFMI.

21.    In an email these dramatically lower numbers were called "estimated cleanable" square footage by EFS.

22.    Those estimated numbers were in EFS's words a "non issue" since PFMI would conduct their own measurements.

23.    EFS never agreed to the numbers provided by PFMI.

24.    EFS would not accept those numbers and continued to provide their own numbers that lowered the cleanable square footage.

25.    In or around April 2006, EFS deducted approximately 17% off of the bill submitted by PFMI claiming that was to recoup money for the disputed lower square footage numbers cleaned in previous months.

26.    In or around May 2006, EFS deducted approximately 20% from the first bill submitted by PFMI.

27.    There was no agreement between the parties allowing EFS to unilaterally take a set off.  Particularly, since no agreement had been reached as to the actual square footage to be cleaned.

28.    In or around June 2006, EFS terminated the contract with PFMI.

29.    The second bill for May cleaning was not paid by EFS.

30.    In or around June of 2006, EFS entered into a new contract with PFMI based on the new disputed contract numbers and PFMI began billing based on those numbers.

31.    There was an agreement that EFS would not take deductions from the new contract.

32.    Despite starting under a new agreement EFS refused to pay the June 2006 cleaning bill claiming a set off for previous months.

33.    By July 2006, PFMI could no longer continue to work under the EFS agreement due to the large amount of backpay owed.

### COUNT I

34.    On or about July 13, 2005 a contract was entered into between EFS and PFMI for the provision of janitorial services by PFMI to EFS's customer BB&T.

35.    Between July 2005 and June 2006 PFMI provided the contracted for services to EFS.

36.    EFS withheld payment for a portion of those services.

37.    EFS owes PFMI payment for work completed.

38.    Due to EFS's breach of contract PFMI has suffered damages, including, but not limited to, loss of revenue, interest on funds borrowed to pay subcontractors for work done at BB&T branches and loss of business opportunity.

WHEREFORE, PREMISES CONSIDERED, plaintiff demands compensatory damages in compensation for work performed and billed plus interest, attorney's fees and costs as allowed by law.

### COUNT II

39.    EFS represented to PFMI in its bid package that the total square footage to be cleaned was 6.7 million square feet.

40.    The amount of square footage was material to PFMI as PFMI based its pricing calculations including profit margin and eventually the amount in its bid on those square footage numbers.

41.    EFS knew that the square footage numbers were incorrect and were aware that PFMI would rely on those numbers when pricing the job.

42.    PFMI did in fact rely on the square footage numbers in pricing and bidding the job.

43.    This reliance was to PFMI's detriment.

44.    PFMI would not have hired subcontractors to perform this work or priced the work as they did had PFMI been correctly informed of the square footage numbers. In fact had PFMI known the true numbers they would not have bid the job.

WHEREFORE, PREMISES CONSIDERED, plaintiff demands compensatory damages and punitive damages in an amount to be determined by a jury.

## COUNT III

45.    EFS knew or should have known that the square footage numbers they placed in the bid package provided to PFMI were false.

46.    The amount of square footage was material to PFMI as PFMI based its pricing calculations including profit margin and eventually the amount in its bid on those square footage numbers.

47.    EFS was aware that PFMI would rely on those numbers when pricing the job.

48.    EFS misrepresented the square footage to induce PFMI to place a lower per square foot bid.

49.    PFMI did in fact rely on the square footage numbers in pricing and bidding the job and gave a lower price per square foot than had they known the truth.

50.    This reliance was to PFMI's detriment.

51.    PFMI would not have hired subcontractors to perform this work or priced the work as they did had PFMI been correctly informed of the square footage numbers.

WHEREFORE, PREMISES CONSIDERED, plaintiff demands compensatory damages and punitive damages in an amount to be determined by a jury.

## COUNT IV

52.    EFS mistakenly or innocently misrepresented the square footage numbers in the bid package provided to PFMI.

53.    The amount of square footage was material to PFMI, as PFMI based its pricing calculations, including profit margin and eventually the amount in its bid, on those square footage numbers.

54.    The square footage numbers were falsely inflated and EFS was aware that PFMI would rely on those numbers when pricing the job.

55.    EFS misrepresented the square footage to induce PFMI to place a lower per square foot bid.

56.    PFMI did in fact rely on the square footage numbers in pricing and bidding the job and gave a lower price per square foot than had they known the truth.

57.    This reliance was to PFMI's detriment.

58.    PFMI would not have hired subcontractors to perform this work or priced the work as they did had PFMI been correctly informed of the square footage numbers. In fact, had PFMI known the true numbers they would not have bid the job.

WHEREFORE, PREMISES CONSIDERED, plaintiff demands compensatory damages and punitive damages in an amount to be determined by a jury.

## COUNT V

59.   When EFS provided the bid package it had to duty to provide accurate information in that bid package.  In particular, EFS had a duty to disclose all the work expected of the bidder.

60.   BB&T was removing dumpsters from many of its branches and would therefore be requiring the janitorial crew to haul the trash and garbage away from the facility.

61.   EFS concealed and/or failed to disclose to PFMI that BB&T would not pay for the trash removal.

62.   The suppression of this fact induced PFMI to enter a lower bid than had PFMI known of the added expense associated with trash disposal.

63.   PFMI incurred greater expense for trash disposal and has not been paid by EFS for this service.

WHEREFORE, PREMISES CONSIDERED, plaintiff demands compensatory damages and punitive damages in an amount to be determined by a jury.

## COUNT VI

64.   During its due diligence PFMI learned that BB&T wanted to remove the dumpsters from most, if not all, of its branch locations.

65.   In a conference call EFS acknowledged this would increase PFMI's costs and stated that PFMI would be paid for this trash removal and disposal.

66.   EFS told PFMI to submit separate trash removal invoices and that those would be paid for separately from the other janitorial services.

67.   To date PFMI has not been paid for the trash removal and disposal.

WHEREFORE, PREMISES CONSIDERED, plaintiff demands compensatory damages and punitive damages in an amount to be determined by a jury.

_____
Rhon E. Jones (JON093)
Attorney for Plaintiff

_____
Scarlette M. Tuley (TUL007)
Attorney for Plaintiff

OF COUNSEL:
BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.
Post Office 4160
Montgomery, Alabama 36103-4160
Phone: (333) 269-2343
Fax: (334) 954-7555

**PLAINTIFF REQUESTS A TRIAL BY STRUCK JURY ON ALL ISSUES OF THIS CASE.**

_____
OF COUNSEL



EMCOR Facilities Services, Inc.
320 23rd Street, South, Suite 100
Arlington, VA 22202

July 13, 2005

Mr. Greg Littlefield
President/CEO
PFMI
4164 Troy Highway
Montgomery, AL 36116

Dear Greg:

    This letter of intent will confirm our discussions as follows with respect to the proposed provision by Professional Facilities Management, Inc. (PFMI) to EMCOR Facilities Services (EFS) of certain facilities services (the "Services") at the Branch Banking and Trust (BB&T) branch facilities (the "Facilities").

1.  EFS and PFMI shall promptly proceed to negotiate a mutually satisfactory definitive Contractor Agreement (the "Definitive Agreement"), based on PFMI's proposed scope and pricing, as incorporated in EFS' proposal to BB&T.  The form of agreement (the "Form") attached hereto as Exhibit A shall be the basis for the negotiation of the Definitive Agreement. EFS and PFMI shall each be entitled to propose changes in the terms, conditions and pricing from those contained in the form.  If EFS and PFMI fail to agree neither EFS nor PFMI shall be obligated to enter into any agreement with respect to the provision of Services.

2.  The Contract for services between EMCOR Facilities Services, Inc and BB&T has been executed as of July 12, 2005. EFS and PFMI intend to execute a Definitive Agreement, which incorporates the applicable terms, conditions and pricing contained in such contract.  It is anticipated that PFMI will begin to transition its services beginning July 12, 2005, with full implementation by September 6, 2005. PFMI hereby agrees on July 12, 2005 to commence providing facilities services to be mutually agreed upon by EFS and PFMI (the "Interim Services") at the Facilities.  PFMI shall be paid for services provided during the this period, in accordance with the approved pricing provided by PFMI to EFS, payable monthly within 30 days of EFS' receipt of an invoice for such Interim Services.  Notwithstanding the foregoing, until a Definitive Agreement is executed, either party may terminate such Interim Services at any time upon 30 days notice.



3.   This letter of intent constitutes the entire understanding of the parties hereto with respect to the subject matter hereof and supercedes all prior agreements or understandings between the parties with respect to such subject matter. This letter of intent shall be governed by the domestic substantive laws of the State of Virginia, without regard to conflicts of laws rules. This letter of intent may be signed in multiple counterparts, all of which shall constitute the same agreement.

4.   This letter of intent represents a non-binding statement of our intentions with respect to the provision of Services (other than Interim Services) and does not constitute a firm or final agreement or Definitive Agreement for the provision of the Services (other than Interim Services) by PFMI. No party shall be bound to the other with respect to the provision of Services (other than Interim Services) until a Definitive Agreement shall have been prepared, executed and delivered.

If the foregoing is in accordance with your understanding, please sign this letter of intent in the space provided below and return it to my attention by facsimile no later than July 18, 2005. Please also send an original executed counterpart of this letter to me by overnight courier. The proposal contained herein will expire unless we have received this letter of intent signed by you within the time period provided above or if sooner rejected.

Very truly yours,

EMCOR FACILITIES SERVICES, INC.

By: _Deborah J. Crosby_

Name: _Deborah F. Crosby_

Title: _Vice President_

The foregoing is hereby confirmed
and agreed to by:

PROFESSIONAL FACILITIES MANAGEMENT, INC.

By: _Greg L. Littlefield_

Name: _Greg L. Littlefield_

Title: _CEU_

G:\DOCS\CARRIE 3005-864T\PFMI\LOI\07_13_05 F rv1 doc

# EXHIBIT B



# CORPORATE DETAILS

### Office of the Secretary of State
### State of Alabama

---

**INITIATE NEW BROWSE**

```
Corporation                                              D/C 110-984
  Legal Name:   Professional Facilities Management, Inc.

Place Of Inc:   Montgomery County

Date Of Inc.:   06-05-1986

Reg Agent...:   WHITAKER, JOHN B
                2112 GIBSON ST
                MONTGOMERY, AL  36110

Prin Address:   MONTGOMERY, AL

Capital Amt.:   $10,000 Authorized  $1,000 Paid In

Nat Of Bus..:   JANITORIAL SERVICES

Names Of Inc:   WHITAKER, JOHN B
                WHITAKER, FRANCES T
```

**TRANSACTION LIST**       2006       **ANNUAL REPORTS**


**← PREVIOUS PAGE**



---

© 2006, Office of the Secretary of State, State of Alabama

# EXHIBIT B

# EXHIBIT C

RECEIVED

**IN THE UNITED STATES DISTRICT**
**FOR THE MIDDLE DISTRICT OF ALABAMA** 2006 DEC 22 P 3: 45

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

| | | |
|---|---|---|
| PROFESSIONAL FACILITIES | ) | |
| MANAGEMENT, INC. | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Case No. _____ |
| | ) | |
| | ) | |
| | ) | |
| EMCOR FACILITIES SERVICES | ) | |
| INC.; and A, B, and C, as fictitious | ) | |
| Parties | ) | |
| | ) | |
| Defendants. | ) | |

**AFFIDAVIT OF KEVIN R. CRAIG**

STATE OF _CALIFORNIA_ )
)
COUNTY OF _ORANGE_ )

1.      My name is Kevin R. Craig.  I am a Senior Vice President of EMCOR FACILITIES

SERVICES Facilities Services, Inc. ("EFS"), a Connecticut corporation, and the named

defendant herein.  I am over twenty-one years of age, have personal knowledge of the matters set

forth herein, and I am otherwise competent to offer my testimony.

2.      As a Senior Vice President of EFS, I am generally familiar with the financial aspects of

Branch Banking & Trust's ("BB&T") agreement with EFS.  I am also familiar EFS's agreement

with Plaintiff to provide certain cleaning services for over one thousand (1000) BB&T facilities

1

**EXHIBIT  C**

in over ten (10) different states and the District of Columbia, which is the subject of the above referenced action.

3.    Plaintiff's agreement with EFS based payment upon the actual amount of cleanable square feet for these BB&T facilities.

4.    As part of this agreement, Plaintiff was required to verify the actual cleanable square footage of the BB&T facilities in order to correctly invoice the customer (BB&T) for work performed.

5.    Plaintiff, however, failed to adhere to its agreement.  Plaintiff incorrectly represented the amount of cleanable square footage within its scope of work, over-billed EFS, and provided substandard labor, which harmed EFS.

6.    As a direct result of Plaintiff's failure to accurately represent the amount of cleanable square footage, BB&T instructed EFS to adjust Plaintiff's billings to correctly reflect the actual amount of cleanable square footage.  This resulted in a reduction of Plaintiff's claimed entitlement to payment in excess of $150,000.00.

7.    EFS disputes Plaintiff's entitlement to further payment, disputes that it breached its agreement with Plaintiff, and has been harmed by Plaintiff's failure to comply with the terms of the agreement.

2

8.    In the above referenced action, Plaintiff is seeking recovery of the reduction of its billings that were made to accurately reflect the cleanable square footage within Plaintiff's scope of work. The adjustments made to Plaintiff's billings are in excess of $150,000.00.

**FURTHER SAYETH AFFIANT NAUGHT**



Kevin R. Craig
EMCOR FACILITIES SERVICES, INC.
Senior Vice President

Subscribed and sworn to this 20th
day of December 2006

Notary Public

My Commission Expires

APRIL 7, 2010

THOMPSON T. LE
COMMISSION #1656670
Notary Public - California
ORANGE COUNTY
My Commission Expires
APRIL 7, 2010

3