IN THE UNITED STATES DISTRICT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| PROFESSIONAL FACILITIES MANAGEMENT, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No.: 2:06CV1136-MHT |
| EMCOR FACILITIES SERVICES, INC.; and A, B, and C, as fictitious parties | ) ) ) ) | |
| Defendants. | ) ) | |

## BRIEF IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT ON COUNTS I, II, III, AND IV OF PLAINTIFF'S COMPLAINT AND BREACH OF AN ALLEGED TWO YEAR ORAL CONTRACT

EMCOR Facilities Services, Inc. ("EMCOR") hereby files this Brief in Support of

Motion for Partial Summary Judgment and shows the Court as follows:

I.    **Introduction and Factual Background**

This action arises from Plaintiff's failure to perform its obligations under a janitorial

service agreement with EMCOR Facilities Services, Inc. ("EMCOR") for Branch Banking &

Trust ("BB&T") facilities throughout the United States.  On or about July 1, 2005 EMCOR

entered into a Master Purchase and Service Agreement  with BB&T (the "BB&T Contract") for

the provision of certain maintenance, landscaping, snow-removal, and janitorial services.  The

BB&T Contract established a three-year term of EMCOR's contract performance from July 1,

2005 through June 30, 2008 and further established that EMCOR was entitled to revenues

exceeding $18 million for performance of this work.

1

EMCOR subcontracted all of its janitorial scope of work to Plaintiff, Professional Facilities Management Services, Inc. ("PFMI" and/or "Plaintiff") pursuant to an agreement memorialized on or about July 13, 2005 (the "PFMI Agreement"). PFMI did not self-perform any of the janitorial work and elected to subcontract its entire scope of work to other sub-tier vendors.

Plaintiff and EMCOR agreed to unit price rates for square footage actually cleaned for each location. Prior to PFMI's agreement to perform the janitorial work, EMCOR provided PFMI with BB&T's assessment of gross square footage and adjusted square footage for each location, which totaled approximately 6.9 million gross square feet and 6.7 adjusted square feet respectively.

PFMI admits that it is not entitled to recover amounts for square footage it never cleaned and further admits that the actual amount of square footage cleaned controls its recovery under the PFMI Agreement. PFMI corporate representatives admit that the amount of square footage to be cleaned was not known at the time of the bid. PFMI further admits that PFMI's agreed to accurately measure the total amount of square footage actually cleaned within the first ninety (90) days of contract performance and that billings and ultimately payment for each BB&T location would be adjusted to reflect the actual amount of square footage cleaned. During PFMI's measurements of cleanable square footage, PFMI billed and was paid based on gross square footage listed in the bid package, which totaled 6.9 million square feet.

Plaintiff admits that it did not self perform any of the initial measurements and delegated this responsibility to its sub-tier vendors. PFMI failed to complete the measurements of the

BB&T facilities within the first 90 days of contract performance. The initial measurements performed by PFMI's vendors were provided many weeks later and were admittedly inaccurate.

PFMI's corporate representatives admit that "30 % to 40%" of the measurements belatedly provided by its vendors were "not accurate." Specifically, for roughly "30% to 40 %" of locations purportedly measured, PFMI's vendors incorrectly represented that the gross square footage was identical to the net square footage cleaned.

Subsequently, EMCOR was directed by BB&T to perform measurements of the BB&T facilities with its technical personnel to determine the correct amount of square footage cleaned by PFMI. During this timeframe PFMI still received payment based upon gross square footage identified in the initial bid package.

The measurements conducted by EMCOR technical personnel and BB&T representatives revealed that the actual amount of cleaned square footage was no less than 20 % less than the 6.9 million gross square feet. Accordingly, in March, 2006, EMCOR and BB&T adjusted PFMI's invoices for March through May, 2006 by 20% to account for the actual amount of square footage cleaned.

In addition to the foregoing, the cleaning services provided by PFMI's vendors were "horrible." Instead of focusing on the scope of work that EMCOR was to self perform for BB&T, EMCOR's technical personnel were consumed with responding to hundreds of janitorial complaints and EMCOR's technical HVAC/maintenance personnel were required to perform measurements that PFMI should have provided many weeks earlier.

Pursuant to the July 13, 2005 agreement, EMCOR terminated the original agreement with PFMI, effective June 15, 2006, by letter dated April 28, 2006. Thereafter, EMCOR and PFMI

3

orally agreed to delete much of PFMI's scope of work. PFMI ceased performing any work on July 14, 2006. As a direct result of PFMI's multiple failures, EMCOR lost the BB&T account.

PFMI admits that the parties always agreed to adjust the square footage numbers based upon the actual amount of square footage cleaned, but disputes the amount of adjustment. PFMI also agrees that it was PFMI's responsibility to accurately measure the BB&T locations within the first 90 days of contract performance and that it failed to correctly perform this obligation. As such, PFMI's claims for "misrepresentation" concerning the amount of square footage included in the bid are a *non-sequitur* and fail as a matter of law.

## II.    Statement of Undisputed Material Facts

1.    On or about July 13, 2005 EMCOR and PFMI executed a contract whereby PFMI agreed to clean approximately 1400 BB&T facilities based upon unit prices per square foot. *See* July 13, 2005 Agreement between EMCOR and PFMI, attached as Exhibit A hereto.

2.    PFMI generated the unit price rates for each BB&T location to be cleaned based upon the number of days of service for each location, which included a $.18 to $.21 per square foot mark-up for profit and overhead. Fed. R. Civ. P. 30 (b)(6) deposition of Greg Littlefield, p. 71 line 7 through p. 74 line 2, which is attached hereto as Exhibit B.

3.    PFMI admits that the contract price for the work is determined by the multiplying the unit price rate by the <u>actual</u> square footage cleaned, not the gross square footage contained in the bid package.

> "Q.    Sure. Was it PFMI's agreement that [the] contract price would be based upon whatever your unit prices were times the actual amount of cleanable square footage out there that was going to be taken care of by PFMI during the first ninety days?
>
> A.    That is correct."

4

*See* Fed. R. Civ. P. 30 (b)(6) deposition of Greg Littlefield p. 100 lines 3 through 10, Exhibit B hereto.

4.    PFMI's corporate representative admits that it was PFMI's responsibility to accurately measure the actual amount of cleanable square footage for all BB&T branches within its scope of work within the first ninety (90) days of contract performance.

> "Q.    Certainly. But simply put, the deal was not gross, it's whatever is cleanable out there, and there were going to be measurements taken within the ninety days to find that out, is that right?
>
> A.    That's correct."

*See* Fed. R. Civ. P. 30 (b)(6) deposition of Greg Littlefield, p.108 lines 7 through 13, Exhibit B hereto; *see also* ¶ 16 of Plaintiff's Complaint ("During the first ninety (90) days of the service PFMI, pursuant to the parties agreement, conducted measurements of many of the BB&T branch locations. Those measurements were provided to EFS"), attached as Exhibit C hereto.

5.    EMCOR relied upon PFMI to correctly measure the cleanable square footage of BB&T banking facilities in order to correctly determine the amount of payment due PFMI.

*See* Fed. R. Civ. P. 30 (b)(6) deposition of James Wohlers, p. 118 lines 10 through 18, attached as Exhibit D hereto.

6.    PFMI did not perform the initial measurements of the BB&T facilities. Instead, PFMI delegated this responsibility to its sub-tier vendors.

> "Q.    Now, was PFMI actually doing these surveys or was it a vendor of PFMI?
>
> A.    It was the vendors."

*See* Fed. R. Civ. P. 30 (b)(6) deposition of Greg Littlefield, p. 101 lines 16 through 18, Exhibit B

hereto.

7.    PFMI's sub-tier vendors' compensation was directly affected by the amount of cleanable

square footage it reported.

> "Q.    Okay.  What type of—what type of contracts were they? And by that, I mean you
> have unit price contracts for some contractors based on square footage, and did
> you have lump sum contracts?
>
> A.    I do not recall lump sum contracts.  I couldn't say for sure that there wasn't one,
> but most of them were square footage based contracts."

*See* Fed. R. Civ. P. 30 (b)(6) deposition of James Wohlers, p. 99 lines 6 through 20, Exhibit D

hereto.

8.    PFMI did not complete measurements of the square footage actually cleaned within the

first 90 days of contract performance, which controlled its contract price.

> "Q.    So I believe your testimony is the subs started measuring whenever they got out
> there in September, correct?
>
> A.    Yes.  I couldn't say that they started—the day they started cleaning.  I think that
> would be a bad assumption.
>
> Q.    And the measurement said (sic) were supposed to be completed in 90 days?
>
> A.    Yes.
>
> Q.    Did that happen?
>
> A.    No."

*See* Fed. R. Civ. P. 30 (b)(6) deposition of James Wohlers, p. 90 line 14 through p. 91 line 1,

Exhibit D hereto.

LitCon 238989.2

9.     Weeks after the deadline for submission of cleanable square footage measurements,

PFMI submitted inflated, admittedly incorrect amounts for square footage actually cleaned.

PFMI admits that 30% to 40% of the amounts represented to be cleanable square footage are

incorrect.

"Q.     Well, let me ask the question, is that a fair statement that 30 to 40 percent you weren't comfortable with those numbers?

A.     I believe so, yes.

Q.     Did it look like the vendor had simply cut the gross square footage and pasted it on the cleanable square footage?

A.     I believe so, but they were handwritten.

Q.     So it's the manual cutting and pasting?

A.     Yeah.

Q.     And you knew that couldn't be right?

A.     We didn't feel it was accurate."

Fed. R. Civ. P. 30(b)(6) Deposition of James Wohlers, p. 92 lines 5 through 16, Exhibit D hereto.

"Q.     Sure. Was it PFMI's agreement that [the] contract price would be based upon whatever your unit prices were times the actual amount of cleanable square footage out there that was going to be taken care of by PFMI during the first ninety days?

A.     That is correct.

Q.     Did PFMI conduct those measurements during the first ninety days?

A.     PFMI conducted measurements within the first ninety days and supplied that information to EMCOR. There was one vendor who had not completed theirs, so we met with EMCOR and extended it a matter of a week or two. PFMI reviewed those measurements and, upon sending them up to EMCOR or delivering them to EMCOR, upon review of them, indicated there was a number that we were not comfortable with that was correct so we wanted to go back and remeasure. It was

7

> a certain percentage, say, we felt, 60-70 percent of them we had a good feel for, the rest not."

Fed. R. Civ. P. 30(b)(6) Deposition of Greg Littlefield, p. 100 line 3 through p. 101 line 4,

Exhibit B hereto.

10.    PFMI admits EMCOR and Plaintiff agreed to adjust or "true up" square footage

calculations based upon accurate measurements of square footage actually cleaned.

> "Q.    Is it a fair statement that—I'm sorry.  Let me just cut through all this.  But there was always going to be an adjustment [in square footage] made; it was just not clear what adjustment was going to be made, correct?
>
> A.    There was—there was—we never claim that there was not an agreement that there would be a, as EMCOR calls it, a true-up, is their terminology I think they use, but an adjustment based on square footage."

Fed. R. Civ. P. 30(b)(6) Deposition of Greg Littlefield, p.138 lines 4 through 15, Exhibit B

hereto.

11.    Thereafter, BB&T instructed EMCOR technical personnel to re-measure BB&T facilities

to correctly determine the amount of square footage actually cleaned.

> "Q.    And I believe you said your regional managers would have done the remeasure?
>
> A.    The remeasure, with a BB&T representative.
>
> Q.    Would the BB&T representative have been somebody from that branch or would it have been somebody further up the chain?
>
> A.    I believe the instructions were that it had to be someone from their facility department if they were available."

Deposition of Sean Brookings, p. 66 lines 2 through 12, attached as Exhibit E hereto.

12.    PFMI billed and was paid based upon its unit price time the 6.9 million gross square

footage pending determination of the actual amount of square footage cleaned.

"Q.    Okay. And during this time frame, PFMI is still billing from the gross square footage, correct?

A.    Yes, we were billing by what we had been instructed to."

Fed. R. Civ. P. 30(b)(6) Deposition of James Wohlers, p. 103 lines 4 through 8, Exhibit D hereto.

"Q.    But you were billing off gross, weren't you?

A.    Yes."

*Id.* at p. 103 lines 4 through 8.

13.    The analyses performed by EMCOR's field personnel revealed that the measurements performed by PFMI's sub-tier vendors were overstated by no less than twenty percent (20%).

"Q.    What were the results of the [EMCOR] mobile techs' square footage measurements?

A.    There was a significant reduction in square footage on the over 10,000 square foot buildings, close to 30 percent. And I don't recall the exact numbers on the other two categories. Those large buildings represented approximately a third of the total square footage."

Deposition of Sean Brookings, p. 69 line 19 through p. 70 line 5, Exhibit E hereto.

14.    From March, 2006 through May 31, 2006, EMCOR adjusted PFMI's invoices by 20% to reflect the amount of square footage actually cleaned. Deposition of Sean Brookings, p. 76 line 19 through p. 78 line 13, Exhibit E hereto.

15.    In addition to PFMI's admittedly incorrect representations of square footage actually cleaned, the cleaning services provided by PFMI's vendors were "horrible."

Deposition of Sean Brookings, p.103 lines 1 through 12, Exhibit E hereto.

16.    By letter dated April 28, 2006, EMCOR terminated its contract with PFMI to be effective June 15, 2006. Fed. R. Civ. P. 30(b)(6) deposition of James Wohlers, p. 161 line 8 through p. 163 line 23, Exhibit D hereto.

9

17.     EMCOR and PFMI orally agreed to delete much of PFMI's scope of work and prices

were to be based upon actual square footage amounts measured by EMCOR's representatives.

*See id.*

18.     PFMI announced that it would no longer perform this oral agreement on July 14, 2006.

*See id.*, p. 168 line 1 through p. 169 line 5, Exhibit D hereto.

19.     PFMI now contends and is seeking in this action "$420,614" in "lost profits" for an

alleged two year oral agreement.  *See* Plaintiff's Expert Report pages 3 and 6, attached hereto as

Exhibit F hereto.

20.     Plaintiff admits that there is no signed two year written agreement to perform janitorial

services between EMCOR and PFMI.

> "Q.     I've read the cancellation letter.  My question is different.  My question is, is there
> a written agreement or written contract for services going forward after the
> termination.?
>
> A.     There's a written contract, but there's not a signed contract."
>
> . . .
>
> "Q.     Is there any document in existence signed by both parties memorializing the
> agreement between EMCOR and PFMI?
>
> A.     There was a verbal.
>
> Q.     Okay. But to your knowledge, the best of your knowledge, there is no written
> memorialization (sic) of what the agreement going forward from June 2006
> through 2008 was going to be; is that accurate?
>
> A.     There's no document signed."

Fed. R. Civ. P. 30(b)(6) Deposition of Greg Littlefield, p. 174 line 21 through p. 175 line 21,

Exhibit B hereto.

LitCon 238989.2

21.    Plaintiff further admits that it only performed approximately six weeks following EMCOR's termination of the PFMI Contract before it ceased performing any work.

"Q.    How long did PFMI perform under the new agreement?

A.    Approximately six weeks, a month and a half."

Fed. R. Civ. P. 30(b)(6) Deposition of Greg Littlefield, p. 176 lines 10 through 13, Exhibit B hereto.

**III.    Argument and Citation of Authority**

**A.    Standard of Review**

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Davis v. Dorsey*, 2007 WL 2007952, *1 (M.D.Ala. 2007)(quoting Fed. R. Civ. P. 56(c). After the moving party informs the court of the basis for the summary judgment motion, the non-moving party has the burden to demonstrate why summary judgment would not be proper. *Id*. An entry of summary judgment is mandatory "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

**B.    Summary of Argument**

EMCOR is entitled summary judgment on three issues:  1) EMCOR did not "misrepresent" the cleanable square footage of the BB&T branches for which PFMI was to provide janitorial services and paid PFMI to correctly measure these amounts; 2) PFMI is not

entitled to recover projected future profits on work it did not perform under an alleged two-year

oral agreement that is void under the statute of frauds; and 3) PFMI is only entitled to be paid for

the actual square footage cleaned by PFMI and its subcontractors.

**C.    EMCOR is entitled to judgment as a matter of law on PFMI's claims of misrepresentation in Counts II, III, and IV because PFMI admits the actual cleanable square footage was unknown and it was PFMI's responsibility to accurately measure the amount of square footage cleaned.**

Counts II, III, and IV of Plaintiff's Complaint allege that EMCOR "misrepresented" the

"square footage numbers" to be cleaned under PFMI's contract with EMCOR.

Specifically, Plaintiff alleges the following:

COUNT II

"[EMCOR] knew that the square footage numbers were incorrect and were aware that

PFMI would rely on those numbers when pricing the job." Exhibit C, Plaintiff's

Complaint, ¶ 41.

COUNT III

"[EMCOR] knew or should have known that the square footage numbers they placed in

the bid package provided to PFMI were false." *Id.*, ¶ 45

COUNT IV

"[EMCOR] mistakenly or innocently misrepresented the square footage numbers in the

bid package provided to PFMI." *Id.*, ¶ 52.

"The square footage numbers were falsely inflated and [EMCOR] was aware that PFMI

would rely on those numbers when pricing the job." *Id.*, ¶54.

The undisputed facts destroy any notion that EMCOR misrepresented "square footage

numbers" to Plaintiff.   PFMI's corporate representatives admit that:

LitCon 238989.2

- The contract price for the work is determined by the multiplying the unit price rate by the actual square footage cleaned, not the gross square footage contained in the bid package

  "Q.   Sure. Was it PFMI's agreement that [the] contract price would be based upon whatever your unit prices were times the actual amount of cleanable square footage out there that was going to be taken care of by PFMI during the first ninety days?

  A.    That is correct."

  See Statement of Undisputed Fact, No. 3.

- It was PFMI's responsibility under its agreement with EMCOR to correctly measure the square footage actually cleaned within the first 90 days of contract performance.

  "Q.   Sure. Was it PFMI's agreement that [the] contract price would be based upon whatever your unit prices were times the actual amount of cleanable square footage out there that was going to be taken care of by PFMI during the first ninety days?

  A.    That is correct.

  Q.    Did PFMI conduct those measurements during the first ninety days?

  A.    PFMI conducted measurements within the first ninety days and supplied that information to EMCOR. There was one vendor who had not completed theirs, so we met with EMCOR and extended it a matter of a week or two. PFMI reviewed those measurements and, upon sending them up to EMCOR or delivering them to EMCOR, upon review of them, indicated there was a number that we were not comfortable with that was correct so we wanted to go back and remeasure. It was a certain percentage, say, we felt, 60-70 percent of them we had a good feel for, the rest not.

  At that point in time, as PFMI was receiving surveys back, we adjusted our billing to reflect the new numbers coming in and was instructed by EMCOR not to do that. On several occasions, we tried to adjust the numbers moving forward so it could be more accurate; and EMCOR continued to instruct us not to reduce or increase if we got a survey that showed an increase in square footage."

  See Fed. R. Civ. P. 30(b)(6) Deposition of Greg Littlefield, p. 100 line 3 through p. 101 line 15, Exhibit B hereto.

13

- PFMI's corporate representatives uniformly admit PFMI failed to accurately perform

  30% to 40% of these square footage measurements. *See id*.

  "Q.    Well, let me ask the question, is that a fair statement that 30 to 40 percent you weren't comfortable with those numbers?

  A.    I believe so, yes.

  Q.    Did it look like the vendor had simply cut the gross square footage and pasted it on the cleanable square footage?

  A.    I believe so, but they were handwritten.

  Q.    So it's the manual cutting and pasting?

  A.    Yeah.

  Q.    And you knew that couldn't be right?

  A.    We didn't feel it was accurate."

*See* Fed. R. Civ. P. 30(b)(6) Deposition of James Wohlers, p. 92 lines 5 through 16.

- PFMI billed and was paid based upon <u>6.9 million gross square feet</u> from September 2005

  until March 2006.

  "Q.    Okay. And during this time frame, PFMI is still billing from the gross square footage, correct?

  A.    Yes, we were billing by what we had been instructed to."

Fed. R. Civ. P. 30(b)(6) Deposition of James Wohlers, p. 103 lines 4 through 8.

  "Q.    But you were billing off gross, weren't you?

  A.    Yes."

Fed. R. Civ. P. 30(b)(6) Deposition of James Wohlers, p. 103 lines 4 through 8.

14

- PFMI admits that its invoices should be adjusted to reflect the square footage actually cleaned. *See* Statement of Undisputed Facts, Nos. 3 and 10.

In order to recover on a claim of misrepresentation PFMI must present evidence of a false representation. *See Fisher v. Comer Plantation, Inc.*, 772 So.2d 455, 463 (Ala. 2000) (holding plaintiff must establish a false representation to recover for fraudulent misrepresentation); *Army Aviation Ctr. Fed. Credit Union v. Johnson*, 716 So.2d 1250, (Ala. Civ. App. 1998) (plaintiff must prove that there was a false representation to recover damages for an innocent misrepresentation).

Additionally, PFMI must show that it reasonably relied upon this false representation to its detriment. *Alabama Elec. Co-op, Inc. v. Bailey's Const. Co., Inc.*, 950 So.2d 280, 284 (Ala. 2006) (fraud and negligent misrepresentation require reasonable reliance by the plaintiff).

PFMI cannot establish any element of its claims of misrepresentation contained in Counts II, III, and IV. EMCOR necessarily could not "misrepresent" the amount of square footage actually cleaned because, as PFMI admits, <u>EMCOR relied upon PFMI to measure the actual square footage cleaned for the BB&T branch banking locations</u>. PFMI cannot show that it reasonably relied upon gross square footage calculations included in the bid documents because PFMI admits that it agreed and was paid to perform these measurements. Additionally, PFMI was paid based upon gross square footage for at least six months of the Contract! Based on Plaintiff's Fed. R. Civ. P. 30(b)(6) corporate representatives' admissions, PFMI's claims for misrepresentation are specious and EMCOR is entitled to judgment entered in its favor on Counts II, III, and IV.

15

**D.    PFMI's alleged two year oral agreement with EMCOR is void as a matter of law.**

PFMI seeks recovery of "[p]rojected future profit under revised contract terms of June 1, 2006 through June 30, 2008", in the amount of $ 420,614.00. *See* Exhibit F, "Report of Financial Damages," at page 3 and 6.   PFMI admits that it only performed services under this alleged oral agreement from June, 2006 through July 14, 2006 and further admits that it elected to cease performance of work on July 14, 2006. *See* Statement of Undisputed Facts No. 21. PFMI incorrectly seeks entitlement to $420,614.00 in lost profits for work admittedly not performed from July 14, 2006 through June 30, 2008.

Plaintiff's claim for recovery of $420,614.00 fails.   As a matter of law, a two year oral agreement is void on its face because it necessarily cannot "be performed within one year from the making thereof." Ala. Code § 8-9-2(1) (1975).   EMCOR respectfully submits that this Court should enter an order denying Plaintiff recovery of any projected future profits that Plaintiff contends it would have realized pursuant to this alleged oral agreement.

       1.    PFMI's alleged oral agreement with EMCOR to provide janitorial services for a two year period is void as a matter of law.

Pursuant to Alabama Code § 8-9-2:

"In the following cases, <u>every agreement is void unless such agreement or some note or memorandum thereof expressing the consideration is in writing and subscribed by the party to be charged therewith</u> or some other person by him thereunto lawfully authorized in writing:

    (1) Every agreement which, by its terms, <u>is not to be performed within one year from the making thereof</u>."

(emphasis additional).

It is black letter Alabama law that oral contracts that extend for more than one year are void under Ala. Code. § 8-9-2(1) (1975).   *Price v. Univ. of Alabama,* 318 F. Supp. 1084, 1092

(N.D. Ala. 2003) (multi-year, oral agreement to coach football found void for failure to comply with the statute of frauds); *Alabama Agric. and Mech. Univ. v. Jones*, 895 So.2d 867 (Ala. 2004) (oral agreement to increase employee's salary in increments over a two year period violated the statute of frauds); *Ex parte Ramsay*, 829 So.2d 146, 156 (Ala. 2002) (two or three year contract to practice medicine did not comply with the statute of frauds); *M & M Flying Serv., Inc. v. Andalusia-Opp Airport Auth.*, 541 So.2d 556 (Ala. Civ. App. 1989) (five-year, oral management contract violated statute of frauds).

PFMI contends the parties had an oral agreement, which provided that PFMI was to perform janitorial services for a two-year period beginning June 1, 2006 through June 30, 2008. *See* Statement of Undisputed Facts No. 19. EMCOR terminated the original agreement with PFMI effective June 15, 2006. *See* Statement of Undisputed Material Facts No. 16. Plaintiff, however, admits that it ceased performing any services on July 14, 2006. *See* Statement of Undisputed Material Facts Nos. 18 and 21.

PFMI seeks recovery of "[p]rojected future profit under revised contract terms of June 1, 2006 through June 30, 2008" totaling $ 420,614.00. *See* Statement of Undisputed Facts No. 19 and Exhibit F, "Report of Financial Damages," at pages 3 and 6. Assuming all facts are as PFMI has alleged, the oral contract is void on its face as a matter of law. A contract rendered void by the statute of frauds "will not support an action for damages or breach thereof." *Webster v. Aust*, 628 So.2d 846, 848-49 (Ala. Civ. App. 1993). A contract for services extending over a two-year period, by its terms, cannot be performed within one year from the date the agreement was made. Plaintiff admits there is no writing expressing the terms of the agreement signed by EMCOR, the

17

party to be charged. *See* Statement of Undisputed Facts No. 20. Therefore, the contract is void on its face, and PFMI cannot recover the projected future profits it seeks in this action.

2.    PFMI's partial performance of the oral agreement does not entitle PFMI to recover the prospective relief sought.

PFMI's four to six week performance of an oral agreement does not remove the agreement from the statute of frauds. *Alabama Agric. and Mech. Univ.*, 895 So.2d at 872. "[T]he partial performance of a contract, void under the statute of frauds, does not take it from under the influence of the statute, so as to permit a recovery under the contract for any part of the contract remaining executory." *Id.* (quoting *Ex parte Ramsay*, 829 So.2d at 155). "A contract is executory if neither party has fully performed his obligation to the other party." *Price*, 318 F. Supp. at 1092. Prospective relief on a portion of a contract that is manifestly executory is barred, as a matter of law, by the statute of frauds. *Alabama Agric. and Mech. Univ.*, 895 So.2d at 872.

The "projected future profit" sought by PFMI is for work that PFMI never performed. Because this portion of the oral agreement was never performed, the oral agreement is executory. *See* Statement of Undisputed Facts Nos. 18 and 21. As such, PFMI's partial performance of the agreement does not remove the agreement from "under the influence of the statute of frauds." *See, id.* The oral agreement is void and will not support PFMI's claim for damages. Summary judgment should be entered against PFMI denying PFMI entitlement to alleged $420,614.00 in projected future profits for many months of work Plaintiff admits it did not perform.

18

E.    **EMCOR is entitled to partial summary judgment on PFMI's breach of contract claim because PFMI admits it is only entitled to payment for actual square footage cleaned.**

PFMI concedes that it is only entitled to payment for square feet it actually cleaned and further admits that it is not entitled to payment for gross square footage. *See* Statement of Undisputed Facts Nos. 3 and 10. Accordingly, partial summary judgment should be entered on Count I of Plaintiff's Complaint for breach of contract limiting the amount of PFMI's recovery to square footage actually cleaned times the agreed unit price for the work.

**IV.    Conclusion**

WHEREFORE, Defendant respectfully requests that this Court 1) enter judgment in EMCOR's favor on Counts II, III, and IV of Plaintiff's Complaint; 2) enter an Order precluding Plaintiff from recovery of $420,614.00 for lost profits for an alleged two year oral agreement that was not performed by Plaintiff; and 3) enter partial summary judgment on Count I, Plaintiff's breach of contract claim, because Plaintiff admits it is only entitled to payment for actual square footage cleaned.

Respectfully submitted this 17th day of August, 2007,

_____
Benjamin H. Sawyer
GA Bar No. 627935
Attorney for Defendant
EMCOR Facilities Services, Inc.

SUTHERLAND, ASBILL & BRENNAN, LLP
999 Peachtree Street, NE
Atlanta, GA  30309
Phone:  (404) 853-8000

19

LitCon 238989.2

Jack Owen
ASB-4805-N66C
Attorney for Defendant
EMCOR Facilities Services, Inc.

BALL, BALL, MATTHEWS & NOVAK, P.A.
P.O. Box 2148
Montgomery, Alabama 36102-2148
(334) 387-7680
(334) 387-3222 (fax)
Email: ccowen@ball-ball.com

20

IN THE UNITED STATES DISTRICT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

PROFESSIONAL FACILITIES          )
MANAGEMENT, INC.,                )
                                 )
            Plaintiff,           )
                                 )
v.                               )        Civil Action No.: 2:06CV1136-MHT
                                 )
EMCOR FACILITIES SERVICES,       )
INC.; and A, B, and C, as fictitious )
parties                          )
                                 )
            Defendants.          )

## CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of August 2007, a copy of the foregoing

DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON COUNTS I, II, III,

AND IV OF PLAINTIFF'S COMPLAINT AND BREACH OF AN ALLEGED TWO YEAR

ORAL CONTRACT AND BRIEF IN SUPPORT was served upon Plaintiff, by depositing a

copy of same in the United States Mail, postage prepaid, in a properly addressed envelope to:

Rhon E. Jones and Scarlette M. Tuley
Beasley, Allen, Crow, Methvin, Portis
& Miles, P.C.
P. O. Box 4160
Montgomery, AL 36103-4160

                                         Benjamin H. Sawyer
                                         GA Bar No. 627935

SUTHERLAND, ASBILL & BRENNAN, LLP
999 Peachtree Street, NE
Atlanta, GA  30309
Phone:  (404) 853-8000

Litcon 238926v1