IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

RECEIVED

2007 SEP 17  P 4: 11

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

PROFESSIONAL FACILITIES        )
MANAGEMENT, INC.,              )
Plaintiff,                     )
                               )
v.                             )        Civil Action No. 2:06CV1136-MHT
                               )
EMCOR FACILITIES SERVICES,  INC., )
Defendant.                     )

**MOTION FOR LEAVE TO AMEND COUNTERCLAIM
AND ADD A COUNTERCLAIM DEFENDANT**

Pursuant to Fed. R. Civ. P. 15(a), defendant EMCOR Facilities Services, Inc.

("EMCOR"), hereby seeks leave from this Court to file an amended Counterclaim, to add a claim

of tortious interference with business and contractual relations against plaintiff, Professional

Facilities Management Services, Inc. ("PFMI") and to add the President of PFMI, Mr. Greg

Littlefield, as a Counterclaim defendant.

As grounds, EMCOR asserts the following:

1.      The Court's Uniform Scheduling Order (Doc. 8), Section 4, established April 13,

2007, as the deadline for amendment of pleadings and addition of parties.

2.      EMCOR brings this Motion to Amend at this time because it only recently

discovered in a September 4, 2007, deposition, facts demonstrating that PFMI and its President,

Greg Littlefield, engaged in acts of tortious interference with EMCOR's contracts, *to-wit*:

PFMI's President paid EMCOR's former Director of Business Development, Mr. Alan

Cristal, thousands of dollars of "commission" for engaging PFMI as a janitorial subcontractor on

the BB&T Contract that is the subject of this lawsuit during Mr. Cristal's service as a Director

for EMCOR.   EMCOR also learned that EMCOR's former Director of Business Development

had negotiated employment with PFMI for over one year during EMCOR's performance of the BB&T Contract. Mr. Cristal later accepted a sales position with PFMI and his salary was based upon revenue "brought to PFMI", including millions of dollars obtained for PFMI on the BB&T Contract that were awarded while Mr. Cristal served as the Director of Business Development for EMCOR. In his deposition, Mr. Cristal admitted that he only considered PFMI as a janitorial subcontractor for the BB&T Contract and further admitted that a different contractor should have been used by EMCOR.

3.      The evidence has established that EMCOR's contract with BB&T was terminated due to the poor performance of the janitorial component, which was awarded by subcontract to PFMI on the recommendation of Alan Cristal.

In support of this Motion, EMCOR submits the following evidence:

1.      Excerpts of deposition of Alan Cristal, taken September 4, 2007, attached hereto as Exhibit "A."

2.      Excerpts of deposition of Greg Littlefield, taken August 9, 2007, attached hereto as Exhibit "B."

3.      Affidavit of Ray Stribling of EMCOR Services, Aircond Corporation, dated September 17, 2007, attached hereto as Exhibit "C."[1]

4.      Deposition Exhibit No. 68, attached hereto as Exhibit "D."

5.      Excerpts of deposition of Randy Hondros, Senior Vice President of BB&T, taken on August 29, 2007, attached hereto as Exhibit "E."

6.      Deposition Exhibit No. 66, attached hereto as Exhibit "F."

---

[1]    EMCOR submits herewith a facsimile copy of Mr. Stribling's affidavit, to avoid delay in presenting the subject Motion. The original will be filed immediately upon its receipt by the undersigned.

In further support of this Motion, EMCOR relies upon the Brief in Support of Motion to Amend Counterclaim, filed contemporaneously herewith, all pleadings and papers on file with the Court, and any oral argument this Court may consider and allow.

THE FOREGOING CONSIDERED, defendant EMCOR moves the Court for leave to file an amended Counterclaim and to add the President of PFMI, Greg Littlefield, as a Counterclaim Defendant.

Pursuant to Local Rule 15.1, the original and one copy of the proposed Amended Counterclaim are also filed contemporaneously herewith.

JACK OWEN  (ASB-4805-N66C)
Attorney for Defendant
Emcor Facilities Services, Inc.

OF COUNSEL:
BALL, BALL, MATTHEWS & NOVAK, P.A.
Post Office Box 2148
Montgomery, Alabama  36102-2148
(334) 387-7680
(334) 387-3222 (Fax)
Email: CCOWEN@BALL-BALL.COM

and

Benjamin H. Sawyer
SUTHERLAND, ASBILL & BRENNAN, LLP
999 Peachtree Street, N.E.
Atlanta, GA 30309
(404) 853-8188
Email: BENJAMIN.SAWYER@SABLAW.COM

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing Motion upon counsel of record noted below, by placing the same in the U. S. Mail, first class postage prepaid and properly addressed.

DATED:        September 17, 2007

_____
OF COUNSEL

Mr. Rhon E. Jones
Ms. Scarlette M. Tuley
BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.
P.O. Box 4160
Montgomery, AL  36103-4160
Email:  RHON.JONES@BEASLEYALLEN.COM
Email:  SCARLETTE.TULEY@BEASLEYALLEN.COM

**Copy of Transcript**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

PROFESSIONAL FACILITIES
MANAGEMENT, INC.,

        Plaintiff,

    vs.

EMCOR FACILITIES SERVICES, INC.,

        Defendant.

CIVIL ACTION
NO.: 2:06CV1136-MHT

**VIDEOTAPED DEPOSITION OF**

**ALAN CRISTAL**

September 4, 2007
11:16 a.m.

23rd Floor
999 Peachtree Street, N.E.
Atlanta, Georgia

Candace L. Payne, CCR-B-2317



# BROWN&GALLO
LLC

Telephone (404) 495-0777   (404) 876-8979
Toll Free   (877) 495-0777
Fax (404) 495-07

101 Marietta Street, Suite 2700
Atlanta, GA 30303

1740 Peachtree Street, NW
Atlanta, GA 30309

www.galloreporting.com

**EXHIBIT**

**A**

Alan Cristal                                    September 4, 2007

35

1    presence that was willing to take on this

2    project.

3         Q.    Okay.   What subcontractors to

4    perform the janitorial component did you

5    consider?

6         A.    I actually only considered one,

7    and that was PFMI.   I think there was some

8    other considerations about a company called

9    ABM, and one of the problems with choosing

10   ABM is the fact that they tell you up front

11   that they basically subcontract all of their

12   work.   And ABM was somewhat of a competitor

13   to EMCOR in that they provided some

14   mechanical maintenance services to various

15   clients, and I just didn't like giving work

16   to competitors.

17        Q.    You said one of the problems with

18   ABM, well, among others, was that they

19   subcontract all their work?

20        A.    Yes.

21        Q.    Okay.   And they were up front

22   about it?

23        A.    Yeah.   That -- that's how they do

24   business.   That's their business motto.

25        Q.    Are you aware of any work that



BROWN & GALLO

Telephone  (404) 495-0000  (404) 876-8979
Toll Free  (877) 495-0000  (800) 637-0293
Fax (404) 495-0000

101 Marietta Street, Suite 2700
Atlanta, GA 30303

1340 Peachtree Street, NW
Atlanta, GA 30309

www.galloreporting.com

Alan Cristal                                    September 4, 2007

57

1   you will, calling on people to present their

2   particular portion of the -- I think it was a

3   PowerPoint presentation that we did.

4        Q.    Master of ceremony, if you will?

5        A.    Okay.  That's a good one.

6        You know, I -- just for your record.

7        Q.    Sure.

8        A.    At the time, I didn't realize that

9   ABM was a competitor of ours on this project.

10  It looks like from this e-mail that at some

11  point in time they may have been competing

12  with us or against us for the BB&T project,

13  and as it turns out, they actually were.  And

14  in talking with ABM after the fact, it should

15  have been ABM and us as partners rather than

16  us and PFMI.

17       Q.    Why do you say that?

18       A.    Well, again, it's after the fact,

19  after the project fell apart.

20       Q.    Why -- why do you think it would

21  have been better to have ABM as a partner

22  instead of PFMI?

23       A.    Well, I thought it may not have

24  fallen apart had AEM been a partner.

25  Certainly, you don't stick -- if something



11C

101 Marietta Street, Suite 2700
Atlanta, GA 30303

1740 Peachtree Street, NW
Atlanta, GA 30309

www.galloreporting.com

Telephone  (404) 495-0000   (404) 876-9976
Toll Free   (877) 495-0000   (800) 637-0293
Fax (404) 495-0766

Alan Cristal                                        September 4, 2007

58

1   fell apart you don't stick with the same

2   people.  You try to find somebody else that

3   might have done it -- this as well.

4         Q.    And do you have a belief that ABM

5   would have done better?

6         A.    Couldn't have done any worse.

7         As I understand it from BB&T, ABM took

8   over the janitorial services from PFMI.  I

9   think that was after I had already left.

10        Q.    And I believe you just testified

11  that ABM couldn't have done any worse than

12  PFMI.  What instances are you aware of where

13  PFMI, for lack of a better word, did not

14  perform?

15        A.    They were asked not to -- not to

16  be involved in the project.  Basically kicked

17  off the project.

18        Q.    Do you have an understanding as to

19  -- Well, first let me ask you, how do you

20  come to the understanding that they were

21  kicked off the project?

22        A.    Just scuttlebutt throughout the

23  industry.

24        Q.    At the time, you were working with

25  PFMI; right?



BROWN & GALLO
                                    11C

101 Marietta Street, Suite 2700
Atlanta, GA 30303

1740 Peachtree Street, NW
Atlanta, GA 30309

Telephone (404) 495-0777   (404) 876-8979
Toll Free  (877) 495-0777   (800) 637-0293
        Fax (404) 495-0766

www.galloreporting.com

Alan Cristal                                                September 4, 2007

83

1          Q.    Okay.  Did he also price the
2     landscaping?
3          A.    No.
4          Q.    Okay.  Would he also have priced
5     the janitorial scope?
6          A.    No.  He would have included it in
7     our bid and made it a part of our cost,
8     realized the cost to BB -- BB&T included all
9     services.  So BB&T got a lump sum cost
10    composed of all of the different components
11    of this service.
12         Q.    And do you recall whether EMCOR
13    marked up the janitorial component of these
14    services at all?
15         A.    I do not know.
16         MR. SAWYER: I am going to mark this as
17    the next order, Exhibit 65.
18         (Exhibit-65 was marked for
19    identification.)
20         Q.    (By Mr. Sawyer)  If you would go
21    ahead and take a look at all of that.
22         A.    (Witness complies)  Okay.
23         Q.    I know we talked earlier about the
24    commission, I guess, or incentive award on
25    this.  Does that refresh your recollection as



BROWN & GALLO
                    LLC

Telephone (404) 495-0777  (404) 876-8979
Toll Free  (877) 495-0777  (800) 637-0293
         Fax (404) 495-0766

101 Marietta Street, Suite 2700
          Atlanta, GA 30303

1740 Peachtree Street, NW
        Atlanta, GA 30309

www.galloreporting.com

Alan Cristal                                    September 4, 2007

84

1  far as the amount of money you were paid for

2  this or not?

3          A.    It's about what I thought, $6,000.

4          Q.    Okay.  So the back end of that

5  $60,000, although there's a proof of payment,

6  you didn't receive that?

7          A.    No.  I got the 6520.

8          Q.    What happened to the $6,000 or

9  $60,000?

10         A.    I have no idea.

11         Q.    Why didn't you receive it?

12         A.    I didn't know that's what I was

13  supposed to get.  Are you telling me now that

14  that's what I was supposed to get?

15         Q.    I'm EMCOR's attorney, but what I

16  read on that is that there's been an approval

17  of commission.  EMCOR never told you what you

18  were going -- what you were approved for?

19         A.    That's right.

20         Q.    But all you received is $6,500?

21         A.    About that, yeah.

22         Q.    Okay.  How much did

23  Mr. Littlefield pay you as a commission for

24  getting the BB&T work?

25         A.    $2,000.



BROWN & GALLO LLC

Telephone (404) 495-0777  (404) 876-8979
Toll Free  (877) 495-0777  (800) 637-0293
Fax (404) 495-0766

101 Marietta Street, Suite 2700
Atlanta, GA 30303

1740 Peachtree Street, NW
Atlanta, GA 30309

www.galloreporting.com

Alan Cristal                                        September 4, 2007

85

1          MR. SAWYER:  And we'll mark this as the

2     next order.  Is this 66?

3          (Exhibit-66 was marked for

4     identification.)

5          Q.    (By Mr. Sawyer) Take a look at

6     what's been marked as Exhibit 66.

7          A.    Yep.

8          Q.    When did Mr. Littlefield pay you

9     $2,000 for getting him on board the BB&T

10    account?

11         A.    I think it was over a period of

12    several months, while I was still working at

13    EMCOR with the knowledge of the people at

14    EMCOR.

15         Q.    Who, at EMCOR, knew that you were

16    receiving money from Mr. Littlefield for --

17         A.    Ray Stribling.

18         Q.    I'm sorry.  Let me finish the

19    question.

20         Who, at EMCOR, knew that you were

21    receiving a commission from Mr. Littlefield

22    for getting him on the BB&T account?

23         A.    Ray Stribling.  I asked permission

24    first, before I asked Mr. Littlefield for it.

25         Q.    So you asked Mr. Littlefield for


BROWN & GALLO
LLC

Telephone  (404) 495-0777   (404) 876-8979
Toll Free   (877) 495-0777   (800) 637-0293
        Fax (404) 495-0766

101 Marietta Street, Suite 2700
Atlanta, GA 30303

1740 Peachtree Street, NW
Atlanta, GA 30309

www.galloreporting.com

86

1    the commission?

2        A.    I asked Ray Stribling if I could

3    ask Littlefield for a commission, yes.

4        Q.    Okay.  And what was

5    Mr. Stribling's response?

6        A.    He had no problem with it.

7        Q.    When would you have asked Greg for

8    a commission for --

9        A.    After the contracts were signed.

10       Q.    So it would have been sometime

11   summer of 2005?

12       A.    Whenever the contracts were

13   signed.

14       Q.    And what was Mr. Littlefield's

15   response?

16       A.    He didn't have a problem with it.

17   I also was to receive one from U.S. Lawns,

18   but it never happened.

19       Q.    So U.S. Lawns was also supposed to

20   give -- give you a commission?

21       A.    Yes.

22       Q.    Did Mr. Stribling also approve

23   that?

24       A.    Yep.

25       Q.    Did anyone else from EMCOR know

BROWN & GALLO
LLC

Telephone (404) 495-0777   (404) 876-8979
Toll Free  (877) 495-0777   (800) 637-0293
Fax (404) 495-0766

101 Marietta Street, Suite 2700
Atlanta, GA 30303

1740 Peachtree Street, NW
Atlanta, GA 30309

www.galloreporting.com

Alan Cristal                                    September 4, 2007

92

1  third page of this.

2       A.    (Witness complies.)

3       Q.    And I'm under the heading

4  compensation expectations.  You with me?

5       A.    Yes.

6       Q.    Okay.  If you look at number 3, it

7  says, "Proposal and contracts brought to PFMI

8  prior -- prior to my acceptance of employment

9  count towards revenues provided.  A contract

10 is signed, examples BB&T and Colonial Bank."

11      Does that refresh your recollection as

12 to when this letter was sent?

13      A.    No.

14      Q.    So --

15      A.    The object was that he wanted me

16 to do $4 million worth of business my first

17 year.

18      Q.    That's a lot of business; isn't

19 it?

20      A.    Actually not.

21      Q.    Really?

22      A.    It's very, very common.

23      As an example, yesterday I signed a $20

24 million contract.  So --

25      Q.    Good day yesterday.



BROWN & GALLO
                                    LLC

Telephone  (404) 495-0777   (404) 876-8979
Toll Free   (877) 495-0777   (800) 637-0293
      Fax (404) 495-0766

101 Marietta Street, Suite 2700
        Atlanta, GA 30303

1740 Peachtree Street, NW
     Atlanta, GA 30309

www.galloreporting.com

Alan Cristal                                    September 4, 2007

93

1          A.    It was, but that's typical in our

2     business.

3          I wanted him to count BB&T and Colonial

4     toward that first 4 million.  So in essence,

5     my -- my base, if you will, had already been

6     fulfilled.  He didn't want to pay me a

7     commission until after 4 million and not

8     including the 4 million.

9          Q.    So -- Okay.  Let me make sure I'm

10    -- I'm clear on this.  The negotiations and

11    the request for proposal, what we've looked

12    at here today, were ongoing in March 2005.

13    If you're looking at paragraph --

14         A.    Which -- which proposal?

15         Q.    The BB&T account.

16         A.    Okay.

17         Q.    Okay?

18         If you're looking here at paragraph 3,

19    which says that the BB&T account on your bank

20    will be included as far as the bench mark

21    that you need to make, does that influence

22    you one way or another whether this

23    employment proposal letter went out in 2005

24    or 2006?

25         A.    No, it doesn't influence me one



BROWN & GALLO
LLC

Telephone  (404) 495-0777   (404) 876-8979
Toll Free  (877) 495-0777   (800) 637-0293
       Fax (404) 495-0766

101 Marietta Street, Suite 2700
           Atlanta, GA 30303

1740 Peachtree Street, NW
        Atlanta, GA 30309
     www.galloreporting.com

Alan Cristal                                        September 4, 2007

99

1       Q.    When did you go?

2       A.    Probably the first week that I was

3  with PFMI I did a site visit there to see if

4  we couldn't sell them on operations and

5  maintenance at their facilities.

6       MS. TULEY:  You definitely didn't talk

7  to me then.

8       THE WITNESS:  I talked to some IT guy.

9  I can't remember his name.  He met us there

10  at five in the morning.

11       Q.    (By Mr. Sawyer) Everybody gets up

12  at five in the morning.

13       A.    Well, I got up much earlier

14  because I had to drive to Montgomery.

15       Q.    Well, after -- Strike that.

16       Let me ask it this way.  Did you have

17  any involvement with preparation of anything

18  concerning the lawsuit?

19       A.    No.

20       Q.    Do you continue to have contact

21  today with Mr. Littlefield?

22       A.    Yes.  He's looking for janitorial

23  business from me.

24       Q.    What type of business is he

25  looking for from you?

BROWN & GALLO
LLC

Telephone  (404) 495-0777    (404) 876-8979
Toll Free   (877) 495-0777    (800) 637-0293
Fax (404) 495-0766

101 Marietta Street, Suite 2700
Atlanta, GA 30303

1740 Peachtree Street, NW
Atlanta, GA 30309

www.galloreporting.com

Alan Cristal                                              September 4, 2007

100

1          A.    Janitorial.  Linc doesn't provide

2     janitorial service.  We subcontract.  So he's

3     basically looking for the same type of

4     business that he provided to EMCOR.

5          Q.    When's the last time -- or when

6     did he contact you?  And I mean

7     Mr. Littlefield.

8          A.    I guess it's been about three

9     weeks, maybe four weeks ago.

10         Q.    Did you discuss a particular

11    project that he might be interested in?

12         A.    I assumed that he found out that I

13    was close to signing this large contract and

14    wanted some of the janitorial business.

15         Q.    Is it already signed?

16         A.    Yep.

17         Q.    Which project is it?

18         A.    It's with a major telecom.

19         Q.    AT&T?

20         A.    I'm not at liberty to tell you.

21         Q.    Oh, is there a confidentiality

22    agreement?

23         A.    Yeah.

24         MR. SAWYER: Okay.  Well, let me just

25    certify the question.  Okay.



BROWN & GALLO
                                    LLC

Telephone  (404) 495-0777   (404) 876-8979
Toll Free   (877) 495-0777   (800) 637-0293
       Fax (404) 495-0766

101 Marietta Street, Suite 2700
        Atlanta, GA 30303

1740 Peachtree Street, NW
        Atlanta, GA 30309

www.galloreporting.com

MERRILL LEGAL SOULTIONS
Court Reporting*Legal Videography*Trial Services

1       IN THE UNITED STATES DISTRICT COURT
        FOR THE MIDDLE DISTRICT OF ALABAMA
2                 NORTHERN DIVISION

3
        PROFESSIONAL FACILITIES                ORIGINAL
4       MANAGEMENT, INC.,

5           Plaintiff,
                                        CASE NUMBER
6           vs.                         2:06CV1136-MHT

7       EMCOR FACILITIES SERVICES,
        INC.; and A, B, and C, as
8       fictitious parties,

9           Defendants.

10

11      *       *       *       *       *       *       *       *

12

13          DEPOSITION OF GREG LITTLEFIELD,

14      taken pursuant to stipulation and

15      agreement before Barbara A. Howell,

16      Court Reporter and Commissioner for the

17      State of Alabama at Large, in the Law

18      Offices of Beasley, Allen, Crow,

19      Methvin, Portis & Miles, P.C., 250

20      Commerce Street, Montgomery, Alabama, on

21      Thursday, August 9, 2007, commencing at

22      approximately 9:25 a.m.

23





EXHIBIT
B

Page 37

1      couldn't, you know, recall the names.

2   Q.  So there could have been other people,

3      but you just don't remember right now?

4   A.  There was other people.

5   Q.  There were other people that --

6   A.  There was other people that I would

7      have had contact.  But specific names,

8      I -- at this time -- these were the

9      major -- major players.

10   Q.  How did you first hear about the BB&T

11      account?

12   A.  We were contacted by Alan Cristal.

13   Q.  When was that?

14   A.  If my -- it would have been

15      approximately January-February of '05.

16      Have I got that year correct?  '05.

17   Q.  How did he contact you?

18   A.  By phone, I believe, the first time.

19   Q.  What did he say?

20   A.  I can't recall the actual conversation,

21      but obviously it was to ask us to -- if

22      we'd be interested in a possible

23      project that EMCOR would possibly have

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| PROFESSIONAL FACILITIES MANAGEMENT, INC., Plaintiff, | ) ) ) ) | |
| v. | ) ) | Civil Action No. <u>2:06CV1136-MHT</u> |
| EMCOR FACILITIES SERVICES, INC., Defendant. | ) ) ) | |

## <u>AFFIDAVIT OF RAMON STRIBLING</u>

Before me, the undersigned authority, personally appeared RAMON STRIBLING, who, after being duly sworn, deposes and states as follows:

1.    My name is Ray Stribling.  I am over the age of eighteen (18), suffer no legal disability, and am otherwise competent to make this Affidavit.

2.    I currently serve as salesperson for EMCOR Services/Aircond, located at 400 Lake Ridge Dr., Smyrna GA 30082 and have served in this capacity for 1 year 9 months.  I have personal knowledge of the facts sworn to in this Affidavit and if called to testify in a court of law, I would appear and aver truthfully to these facts.

3.    During March, 2005 through July, 2006, I served as the Manager of O&M at EMCOR Services/Aircond and then the Business Development Manager of O&M for EMCOR Services/Aircond.

4.    During March, 2005 through June, 2006, Mr. Alan Cristal was employed by EMCOR Facilities Services, Inc.

1



5.    At no point in time did Alan Cristal inform me that he was receiving money from Professional Facilities Management, Inc. ("PFMI") or its President, Greg Littlefield, while he was employed by EMCOR Facilities Services, Inc.

6.    At no point in time did Alan Cristal seek permission or approval from me to receive payment from PFMI or Greg Littlefield, while he was an employee of EMCOR Facilities Services, Inc.

7.    I never knew of or approved Alan Cristal's receipt of payment from PFMI or Greg Littlefield.

8.    The first time I was informed of Alan Cristal's receipt of payment from PFMI or Greg Littlefield while he was an EMCOR Facilities Services, Inc. employee was September, 2007.  To the best of my knowledge, information, and belief, no other EMCOR representative knew of and/or approved Alan Cristal's receipt of money from PFMI or Greg Littlefield while he was an employee of EMCOR Facilities Services, Inc.

9.    Accepting payment from a subcontractor while working for EMCOR violates EMCOR's Standards of Business Ethics and Conduct policies.

FURTHER SAYETH AFFIANT NAUGHT

_Ramon Stribling_
Ramon Stribling

SUBSCRIBED AND SWORN
BEFORE ME ON THIS THE
_17th_ DAY OF _September_ , 200 _7_
_Cheryl Hiler Jugovic_
Notary Public
My Commission Expires:
_1-15-08_

**Notary Public, Fulton County, Georgia**
**My Commission Expires January 15, 20°°**

2

21 March 2005

**Mr. Alan B. Cristal**
**1162 Alexandria Court**
**Atlanta, GA 30319**

Mr. Greg Littlefield
President and Chief Executive Officer
**Professional Facilities Management, Inc.**
4164 Troy Highway
Montgomery, AL 36116

Re:  **Employment Proposal Letter** – *A Framework for Employment*

Dear Greg:

The purpose of this letter is to provide you with a framework and basis for Professional Facilities Management, Inc. (PFMI) making an offer of employment to me to become part of the PFMI Team. First I want to thank you for your continued interest in my abilities to assist PFMI in expanding and growing. In retrospect we have been discussing and contemplating this scenario for over a year and a half. Obviously we both agree and realize that I can make a major contribution to your organization in a very short time.

As we have discussed on many occasions, your goal is to bring a seasoned sales professional on board at PFMI for the express purpose of growing the business. You have set your target growth at $4,000,000 per year, and you have invested in a "Client Identification Plan" that will identify target clients in a specified geographic area. The Marketing Company will set pre-approved appointments with potential clients that intend to make a change in their janitorial, landscape, and/or other services. With the addition of a seasoned professional like myself, PFMI will truly be in a most favorable competitive position with the ability to grow as rapidly as you desire.

Under your direction, my main responsibility is to make contact with the potential clients; discover their wants and needs; provide strategies to gain their business; and develop and write winning proposals that acquire new clients and additional revenues for PFMI. Other responsibilities as I see them are to work hand-in-hand with **all** personnel at PFMI, but especially with Buzz, Greg, and you. I am fully aware that in our industry we cannot pigeonhole our duties into certain tasks. I am prepared and willing to do whatever is necessary for the betterment of PFMI.

An area of expertise and experience that will immediately assist PFMI is in developing marketing materials. Another is in writing and developing proposals that not only look professional in every way, but also have the substance and content for a win. Both of these skills come with my 25 years of experience in this industry.

Defendant's Exhibit

_68_

BROWN & GALLO



**21 March 2005**
**Mr. Greg Littlefield**
**Page 2**

During the year and a half that we have been discussing my employment, I have demonstrated many attributes and abilities that make me the best choice for the PFMI Sales Team. These attributes virtually guarantee immediate success.

- 25 years of successful experience in the industry
- Professional relationship sales skills
- Ability to meet and win over prospective clients from CEOs and Owners to Purchasing Agents and Facility Managers
- Ability to *listen* to prospective clients and *hear* their wants and needs and then develop these *wants* and *needs* into strategies for a win
- Creative leadership and strategic thinking
- Untiring work ethic
- Excellent communication, presentation, writing, and people skills
- Consummate team member
- Industry knowledge and contacts
- Ability to coordinate large client proposals and opportunities with PFMI associates in the mechanical, janitorial and landscape arena (i.e. EMCOR, BSCAI & US Lawns)
- Experience in every aspect of outsourcing including janitorial, landscaping, guard service, mechanical, employee leasing, reprographics, mailroom, and reception

You have probably identified other attributes and abilities that I can bring to PFMI. That is why we continue to discuss employment.

In completing this proposal, there are certain expectations and assumptions that I have regarding employment at PFMI. I will try to be brief and just identify the major areas.

- Compensation is a combination of salary, commissions earned, and benefits
- All employment and sales related expenses paid by PFMI
- PFMI to furnish a company vehicle and associated expenses, since in my estimation I will be out of the office on sales calls literally 4-5 days per week
- Participation in a 401K plan and/or profit sharing plan
- Participation in a health insurance plan for myself and two (2) dependents including, but not limited to health, prescription, dental, and vision plans
- Employer to provide suitable computing, communication devices, services, and equipment, such as a laptop computer, cell phone or "blackberry"; internet connection; copier-fax machine; office supplies; office desk and chair, and proposal and marketing materials
- Base of operations to be current Atlanta residence

21 March 2005
Mr. Greg Littlefield
Page 3

In this portion of the Employment Proposal I outline compensation expectations.

**Compensation Expectations**
1. Annual Salary - $87,500 (my current salary)
2. Sales Commissions: Commissions only paid on revenues achieved above $4,000,000 in a twelve (12) month period beginning from date of employment. Commissions paid based on revenues. Revenues equal the value of any signed new contracts gained through my sales and proposal efforts. Commissions earned when client signs contract. Commissions paid in next pay period after receipt of first client payment. Commissions earned equal 0.5% of the initial first year's revenues, plus 0.5% for any contract renewals, extensions, or contracts greater than one (1) year. After three (3) years no additional sales commission is applicable.
3. Proposal and/or contracts brought to PFMI prior to my acceptance of employment count toward revenues provided a contract is signed. (Examples-BB&T & Colonial Bank)
4. If PFMI chooses to discontinue "Client Identification Plan" then commissions will be paid on all new revenues (from one dollar up) that I win for PFMI in that twelve (12) month period.

I am excited about this opportunity and challenge with PFMI, and I trust my proposal for employment meets your criteria. I look forward to being an integral part of the growth and expansion of Professional Facilities Management, Inc. I am prepared to begin at PFMI immediately. However, when you agree to hire me, I plan to give my current employer a minimum of two-week's notice.

Sincerely,

Alan B. Cristal

MERRILL LEGAL SOULTIONS
Court Reporting*Legal Videography*Trial Services

Page 1

1          IN THE UNITED STATES DISTRICT COURT

           FOR THE MIDDLE DISTRICT OF ALABAMA

2                    NORTHERN DIVISION

3

4   PROFESSIONAL FACILITIES

    MANAGEMENT, INC.,

5

                        Plaintiff,

6

                                          Case No.:

        -vs-                         2:06 CV 1136-MHT

7

    EMCOR FACILITIES SERVICES, INC.; AND

8   A, B, AND C, AS FICTITIOUS PARTIES,

9                      Defendants.

    - - - - - - - - - - - - - - - - - - - - - - - - -

10

11

12

13

14        VIDEOTAPE DEPOSITION OF RANDY HONDROS

15             (Taken by Plaintiff)

16        Winston-Salem, North Carolina

17         Wednesday, August 29, 2007

18

19

20

21

22

23

24         Reported in Stenotype by

      Lisa A. DeGroat, Registered Professional Reporter

25   Transcript produced by computer-aided transcription

2100 3rd Avenue North, Suite 960*Birmingham, AL 35203*www.merrillcorp.com



EXHIBIT
E

**MERRILL LEGAL SOULTIONS**
Court Reporting*Legal Videography*Trial Services

Page 79

1      Q.      All right.  My question to you is real  simple.    If

2    the janitorial component had been successfully performed --

3    well, strike that.

4            Let me ask you:   What percent of satisfaction did

5    you consider to be acceptable with respect to the  janitorial

6    services?  What were you looking for?

7      A.      I think Edna and I talked about this  from time to

8    time, and we thought somewhere in the 75 to 80 percent

9    acceptable level would have been reasonable to -- for these

10   types of services.

11     Q.      Had the janitorial scope been properly  performed,

12   would you have recommended that EMCOR be terminated?

13     A.      If -- if what you're asking me is the  -- if the

14   services being provided by their subcontractors had been in

15   the 80 percent approval level --

16     Q.      (NODS HEAD UP AND DOWN)

17     A.      -- would we have terminated them?  It's not likely.

18            MR. SAWYER:   Fair enough.  That's all I have.

19            MS. TULEY:   Let me follow up with one thing --

20   or a couple things.

21                REDIRECT EXAMINATION

22   BY MS. TULEY:

23     Q.      How many of these surveys were done?   Like how many

24   different times were surveys done?

25     A.      There was a survey done in April, and I believe

**From:**  Alan Cristal
**Sent:**  Wednesday, November 30, 2005 7:45 AM
**To:**  littlefieldg@pfmi.net
**Subject:**  BB&T

Greg:  Thank you so much for the commission on BB&T.  I put a lot of work into
securing this business.  I am meeting with Ronny Eller after the new year to
begin negotiating the 600 corporate sites and 300 subsidiary company sites.
Other opportunities are on the horizon.  Thank you again.

My address is:

Alan Cristal
1162 Alexandria Court
Atlanta, GA  30319

Make it a great day!

Alan B. Cristal
Director Customer Solutions Group
EMCOR Facilities Services, Inc.
770.444.3355 (Office)
800.768.2472 (Office)
770.805.2501 (Fax)
404.395.8678 (Cell)
Alan_Cristal@emcorgroup.com
www.emcorgroup.com



Defendant's Exhibit

BROWN & GALLO

EXHIBIT
F

E041686

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

RECEIVED

2007 SEP 17 P 4: 13

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

PROFESSIONAL FACILITIES    )
MANAGEMENT, INC.           )
                           )
Plaintiff                  )
                           )
v.                         )
                           )
                           )
                           )
EMCOR FACILITIES SERVICES  )
INC.; and A, B, and C, as fictitious )
Parties                    )
                           )
Defendants.                )

Civil Action No. 2:06CV1136-MHT

**JURY TRIAL DEMANDED**

**DEFENDANT EMCOR FACILITIES SERVICES, INC.'S
ANSWER AND AMENDED COUNTERCLAIM**

Defendant, EMCOR Facilities Services, Inc. ("EMCOR") states the following Answer to

the Complaint asserted by Professional Facilities Management, Inc. ("Plaintiff").

**ANSWER TO NUMBERED PARAGRAPHS**

1.    EMCOR is without sufficient knowledge or information to form a belief as to the

truth of the averments contained in Paragraph 1.

2.    In response to Paragraph 2, EMCOR states that it is a corporation organized and

existing under the laws of the state of Connecticut.  In further response to Paragraph 2, EMCOR

states that it is authorized to conduct business in the state of Virginia.  The remaining allegations

of Paragraph 2 of Plaintiff's Complaint are denied as stated.

3.    EMCOR denies that Plaintiff has sustained any damages.  The remaining

allegations of Paragraph 3 of Plaintiff's Complaint are denied as stated.

4.    Denied as stated.

LitCon 235758.5

5.    Denied.

6.    EMCOR admits that it executed a written contract with Branch Banking & Trust ("BB&T") to perform cleaning services, landscaping, and certain maintenance work for BB&T properties in over ten (10) states and the District of Columbia. The remaining allegations contained in Paragraph 6 of Plaintiff's Complaint are denied as stated.

7.    EMCOR admits that it executed a written contract with BB&T to perform cleaning services, landscaping, and certain maintenance work for BB&T properties in over ten (10) states and the District of Columbia. The remaining allegations contained in Paragraph 7 of Plaintiff's Complaint are denied as stated.

8.    Denied.

9.    Denied.

10.    Denied.

11.    EMCOR admits that it entered into an agreement with Plaintiff and that it executed a letter of intent. EMCOR also states that Exhibit "A" to Plaintiff's Complaint appears to be an accurate copy of the letter of intent. The remaining allegations contained in Paragraph 11 of Plaintiff's Complaint are denied as stated.

12.    EMCOR admits that it entered into an agreement with Plaintiff and that it executed a letter of intent. EMCOR also states that Exhibit "A" to Plaintiff's Complaint appears to be an accurate copy of the letter of intent. The remaining allegations contained in Paragraph 12 of Plaintiff's Complaint are denied as stated.

13.    Denied.

14.    Denied.

15.    EMCOR admits that Plaintiff was only entitled to payment for cleanable square footage and that it was Plaintiff's duty to verify the amount of cleanable square footage within its scope of work. The remaining allegations contained in Paragraph 15 of Plaintiff's Complaint are denied as stated.

16.    EMCOR admits that, pursuant to its agreement with Plaintiff, Plaintiff was required to verify the amount of cleanable square footage within its scope of work and provide this information to EMCOR. EMCOR denies that Plaintiff complied with its agreement. The remaining allegations contained in Paragraph 16 of Plaintiff's Complaint are denied as stated.

17.    EMCOR admits that it conducted negotiations with Plaintiff. The remaining allegations contained in Paragraph 17 of Plaintiff's Complaint are denied as stated.

18.    Denied.

19.    Denied.

20.    Denied.

21.    Denied.

22.    Denied.

23.    EMCOR admits that it never agreed to pay Plaintiff for gross square footage. EMCOR further admits that Plaintiff failed and refused to provide accurate cleanable square footage amounts to EMCOR. The remaining allegations of Paragraph 23 of Plaintiff's Complaint are denied as stated.

24.    EMCOR admits that it never agreed to pay Plaintiff for gross square footage. EMCOR further admits that Plaintiff failed and refused to provide accurate cleanable square footage amounts to EMCOR. The remaining allegations of Paragraph 24 of Plaintiff's Complaint are denied as stated.

25.     Denied as stated.

26.     Denied as stated.

27.     Denied as stated.

28.     Denied as stated.

29.     Admitted.

30.     Denied as stated.

31.     Denied as stated.

32.     Denied as stated.

33.     Denied as stated.

## COUNT I

34.     EMCOR admits that it entered into an agreement with Plaintiff.  The remaining allegations contained in Paragraph 34 of Plaintiff's Complaint are denied as stated.

35.     Denied.

36.     Denied.

37.     Denied.

38.     Denied.

EMCOR denies any and all averments in Plaintiff's "WHEREFORE" clause and in all of Plaintiff's prayers for relief.  Unless expressly admitted above, each and every averment in Plaintiff's Complaint is denied.

## COUNT II

39.     Denied.

40.     Denied.

41.     Denied.

42.     Denied.

43.     Denied.

44.     Denied.

EMCOR denies any and all averments in Plaintiff's "WHEREFORE" clause and in all of Plaintiff's prayers for relief.  Unless expressly admitted above, each and every averment in Plaintiff's Complaint is denied.

### COUNT III

45.     Denied.

46.     Denied.

47.     Denied.

48.     Denied.

49.     Denied.

50.     Denied.

51.     Denied.

EMCOR denies any and all averments in Plaintiff's "WHEREFORE" clause and in all of Plaintiff's prayers for relief.  Unless expressly admitted above, each and every averment in Plaintiff's Complaint is denied.

### COUNT IV

52.     Denied.

53.     Denied.

54.     Denied.

55.     Denied.

56.     Denied.

57.     Denied.

58.     Denied.

EMCOR denies any and all averments in Plaintiff's "WHEREFORE" clause and in all of Plaintiff's prayers for relief.  Unless expressly admitted above, each and every averment in Plaintiff's Complaint is denied.

## COUNT V

59.     Denied.

60.     Denied as stated.

61.     Denied.

62.     Denied.

63.     Denied.

EMCOR denies any and all averments in Plaintiff's "WHEREFORE" clause and in all of Plaintiff's prayers for relief.  Unless expressly admitted above, each and every averment in Plaintiff's Complaint is denied.

## COUNT VI

64.     Denied.

65.     Denied.

66.     Denied as stated.

67.     Denied.

EMCOR denies any and all averments in Plaintiff's "WHEREFORE" clause and in all of Plaintiff's prayers for relief.  Unless expressly admitted above, each and every averment in Plaintiff's Complaint is denied.

### FIRST AFFIRMATIVE DEFENSE

68.     Some or all of Plaintiff's claims fail to state a claim for which relief can be granted in whole or in part.

### SECOND AFFIRMATIVE DEFENSE

69.     Some or all of Plaintiff's claims are barred by failure of conditions precedent.

### THIRD AFFIRMATIVE DEFENSE

70.     Some or all of Plaintiff's claims are barred by expiration of the applicable statute of limitations.

### FOURTH AFFIRMATIVE DEFENSE

71.     Some or all of Plaintiff's claims are barred by accord and satisfaction.

### FIFTH AFFIRMATIVE DEFENSE

72.     Plaintiff's claims, or portions thereof, are barred by the doctrine of estoppel.

### SIXTH AFFIRMATIVE DEFENSE

73.     Plaintiff's claims, or portions thereof, are barred by failure of consideration.

### SEVENTH AFFIRMATIVE DEFENSE

74.     Plaintiff's claims, or portions thereof, are barred by the doctrine of unclean hands.

### EIGHTH AFFIRMATIVE DEFENSE

75.     Some or all of Plaintiff's claims have been waived.

### NINTH AFFIRMATIVE DEFENSE

76.     Plaintiff's recovery is precluded or must be reduced by the doctrine of setoff.

### TENTH AFFIRMATIVE DEFENSE

77.     Some or all of Plaintiff's claims are barred by Plaintiff's material breach of its agreement with EMCOR.

## ELEVENTH AFFIRMATIVE DEFENSE

78.    Some or all of Plaintiff's claims are barred by the statute of frauds.

WHEREFORE, EMCOR respectfully requests:

a) that Plaintiff take nothing by way of its Complaint;

b) that EMCOR be awarded its costs of defense; and

c) that the Court grant such further relief to EMCOR as it deems just and proper.

## AMENDED COUNTERCLAIM AGAINST PROFESSIONAL FACILITIES MANAGEMENT, INC. AND GREG LITTLEFIELD

EMCOR Facilities Services, Inc. ("EMCOR") hereby files this Amended Counterclaim against Professional Facilities Management, Inc. ("PFMI") and Greg Littlefield and states as follows:

## ALLEGATIONS COMMON TO ALL COUNTS

79.    Paragraphs 1 through 78 of EMCOR's Answer are incorporated herein by reference as though fully set forth herein.

80.    EMCOR is a corporation organized and existing under the laws of the State of Connecticut.  EMCOR is authorized to conduct business in the State of Alabama.

81.    Upon information and belief, Counter Claim Defendant, PFMI is a corporation organized and existing under the laws of the State of Alabama.

82.    This Court has subject matter jurisdiction over this action and personal jurisdiction over the parties.

83.    In or about June of 2005, EMCOR entered into a contract with Branch Banking and Trust ("BB&T") to provide certain cleaning services, landscaping, and certain maintenance work for BB&T properties in over ten (10) states and the District of Columbia.  The total value of this contract was in excess of $10,000,000.00 annually.

84.    In or about July of 2005, EMCOR and PFMI entered into an agreement whereby PFMI agreed to perform certain cleaning services on a unit price basis.

85.    Pursuant to EMCOR's agreement with PFMI, the price of the work was based upon the net cleanable square footage of the properties within PFMI's scope of work.

86.    As part of its agreement with EMCOR, PFMI agreed to verify the total amount of net cleanable square footage within its scope of work in order to accurately charge BB&T for the same.

87.    Additionally, PFMI agreed to perform its work in a reasonably diligent and workmanlike manner, and to further provide proper supervision over its laborers performing the cleaning work and the hiring of workers.

88.    PFMI failed to fulfill its obligations under its agreement with EMCOR. Specifically, PFMI failed to verify the total amount of cleanable square footage within its scope of work, failed to properly perform its cleaning obligations for many BB&T facilities, and failed to provide adequate supervision over its labor and the hiring of workers.

## COUNT I-BREACH OF CONTRACT (against PFMI)

89.    Paragraphs 1 through 88 of EMCOR's Answer and Counterclaim are incorporated herein by reference as though fully set forth herein.

90.    EMCOR and PFMI entered into an agreement whereby PFMI agreed to perform certain cleaning work for BB&T facilities based on the net cleanable square footage of these facilities. As part of this agreement, PFMI was required to verify the total amount of cleanable square footage for each BB&T facility.

91.    Under the agreement, PFMI was required to perform its cleaning services in a timely and workmanlike manner. PFMI was further required to properly supervise its labor

forces and the hiring of workers in order to protect EMCOR and BB&T from damage and/or theft.

92.    PFMI breached its obligations to EMCOR by, among other things, failing to accurately provide the actual amount of cleanable square footage for the BB&T facilities within its scope of work; over billing EMCOR based on inflated representations of cleanable square footage; failing to perform work in a timely and workmanlike manner; and failing to properly supervise its labor forces and the hiring of labor.

93.    As a direct and proximate result of PFMI's breaches of its agreement with EMCOR, EMCOR has been damaged. These damages include, among others, loss of EMCOR's account with BB&T, which exceeded $10,000,000.00 in annual revenue.

94.    PFMI's material breaches of contract caused EMCOR to incur damages in excess of $2,000,000.00.

### COUNT II-INDEMNITY (against PFMI)

95.    Paragraphs 1 through 94 of EMCOR's Answer and Counterclaim are incorporated herein by reference as though fully set forth herein.

96.    Under its agreement with EMCOR, PFMI had a duty to properly supervise its labor and the hiring of its workers.

97.    PFMI breached its duty to EMCOR by failing to properly supervise its labor forces and the hiring of its workers.

98.    As a direct and proximate result of PFMI's failure to fulfill its duties to EMCOR, a "proof bag" containing negotiable instruments and other financial documents was stolen from a BB&T location at 215 West Broad Street in Elizabethtown, North Carolina.

99.    As a direct and proximate result of PFMI's failure to fulfill its duties to EMCOR, EMCOR was required to pay BB&T $112,639.44.

100.    PFMI is responsible to EMCOR for direct and consequential damages arising from PFMI's failure to comply with its obligations.

### COUNT III-NEGLIGENCE (against PFMI)

101.    Paragraphs 1 through 100 of EMCOR's Answer and Counterclaim are incorporated herein by reference as though fully set forth herein.

102.    PFMI was required to perform its cleaning services in a timely, diligent, and workmanlike manner.  PFMI was further required to properly supervise its labor forces and the hiring of workers.

103.    PFMI negligently performed its cleaning services by, among other things, failing to timely and properly perform its work; failing to provide reasonable supervision of its labor; and failing to exercise reasonable care in its hiring of labor.

104.    As a direct and proximate result of PFMI's negligence, EMCOR has been damaged in an amount in excess of $2,000,000.

### COUNT IV-TORTIOUS INTEREFERENCE WITH CONTRACTUAL AND BUSINESS RELATIONS (against PFMI and Greg Littlefield)

104.    Paragraphs 1 through 103 of EMCOR's Answer and Counterclaim are incorporated herein by reference as though fully set forth herein.

105.    PFMI and its President, Greg Littlefield, knew EMCOR employed Mr. Alan Cristal as its Director of Business Development and that EMCOR relied upon Mr. Cristal to protect EMCOR's interests.

106.    PFMI and its President intentionally interfered with EMCOR's contract with Mr. Cristal and its business relationship with BB&T by, among other things, paying EMCOR's

Director of Business Development for retaining PFMI as the janitorial service contractor for the BB&T project.

107.    As a direct and proximate result of PFMI's and Mr. Littlefield's tortious interference with EMCOR's contractual and business relations, EMCOR has been damaged in an amount in excess of $2,000,000.

WHEREFORE, EMCOR respectfully requests that it be awarded:

a)    direct and consequential damages in an amount to be proven at trial;

b)    costs of litigation;

c)    prejudgment interest;

d)    punitive damages on its tortious interference claims; and

e)    such further relief as this Court deems just and proper under the circumstances.


_____
JACK OWEN   (ASB-4805-N66C)
Attorney for Defendant
EMCOR Facilities Services, Inc.

OF COUNSEL:
BALL, BALL, MATTHEWS & NOVAK, P.A.
Post Office Box 2148
Montgomery, Alabama  36102-2148
(334) 387-7680
(334) 387-3222 (Fax)
Email: CCOWEN@BALL-BALL.COM

and

Benjamin H. Sawyer
SUTHERLAND, ASBILL & BRENNAN, LLP
999 Peachtree Street, N.E.
Atlanta, GA 30309
(404) 853-8188
Email: BENJAMIN.SAWYER@SABLAW.COM


LitCon 235758.5

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing Motion upon counsel of record noted below, by placing the same in the U. S. Mail, first class postage prepaid and properly addressed.

DATED:          September 17, 2007

_____
OF COUNSEL

Mr. Rhon E. Jones
Ms. Scarlette M. Tuley
BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.
P.O. Box 4160
Montgomery, AL  36103-4160
Email:  RHON.JONES@BEASLEYALLEN.COM
Email:  SCARLETTE.TULEY@BEASLEYALLEN.COM