**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

PROFESSIONAL FACILITIES )      2007 SEP 17 P 4: 12
MANAGEMENT, INC., )
Plaintiff, )      DEBRA P. HACKETT, CLK
     )      U.S. DISTRICT COURT
     )      MIDDLE DISTRICT ALA
v. )      Civil Action No. 2:06CV1136-MHT
     )
EMCOR FACILITIES SERVICES,  INC., )
Defendant. )

**BRIEF IN SUPPORT OF MOTION TO AMEND COUNTERCLAIM
AND TO ADD A COUNTERCLAIM DEFENDANT**

Defendant EMCOR Facilities Services, Inc. ("EMCOR") hereby files this Brief in Support
of Motion to Amend Counterclaim against Professional Facilities Management, Inc. ("PFMI") and
to Add a Counterclaim Defendant and states as follows:

## I.    INTRODUCTION AND SUMMARY

This action arises out of payment and performance issues pertaining to plaintiff PFMI's
subcontract with defendant EMCOR to perform the janitorial services component of EMCOR's
contract with Branch Bank & Trust ("BB&T").   EMCOR just learned in a September 4, 2007,
deposition, that Greg Littlefield, PFMI's President, paid Mr. Alan Cristal, EMCOR's former
Director of Business Development, a kickback of thousands of dollars of "commission"  for his role
in EMCOR's hiring PFMI as the janitorial subcontractor for the BB&T Project.  EMCOR's former
director admitted that he "only considered PFMI" and that EMCOR would have been better served
with another janitorial subcontractor.

Mr. Cristal admits that he negotiated employment with PFMI throughout the performance of
the BB&T Contract and in May, 2006, he accepted a position with the "PFMI Team." Mr. Cristal's

1

salary at PFMI was based upon revenue he obtained for PFMI. Incredibly, PFMI and EMCOR's former Director of Business Development counted as revenue the millions of dollars PFMI received for the BB&T work that was awarded while Mr. Cristal was a director for EMCOR and owed fiduciary obligations solely to EMCOR.

PFMI's payment and solicitation of Mr. Cristal interfered with EMCOR's contractual relationship with Mr. Cristal and further interfered with EMCOR's business relationship with BB&T. Instead of looking out for EMCOR's interests, Mr. Cristal "only considered PFMI." Ultimately, EMCOR lost the BB&T account, which was worth roughly $20 million in annual revenue. BB&T's Senior Vice President, Randy Hondros, testified that if the janitorial component of the BB&T Contract had been properly performed, then he likely would not have terminated EMCOR.

## II.    STATEMENT OF FACTS IN SUPPORT OF MOTION TO AMEND

1.    On September 4, 2007, EMCOR deposed its former Director of Business Development, Alan Cristal, who was a central figure in obtaining the BB&T account that is the subject of this lawsuit. Mr. Cristal admits he received $6,520.00 from EMCOR as a commission for obtaining the BB&T account for EMCOR. *See* Exhibit "A," excerpts of September 4, 2007, Deposition of Alan Cristal, p. 83 lines 23 through p. 84 line 7.

2.    PFMI's President and designated corporate representative admits that PFMI only learned of the BB&T Project through EMCOR's former Director of Business Development.

"Q.    How did you first hear about the BB&T account?

A.    We were contacted by Alan Cristal."

*See* Exhibit "B," excerpts of August 9, 2007, Fed. R. Civ. P. 30(b)(6) Deposition of PFMI's President Greg Littlefield, p. 37, lines 10 through 12.

3       Mr. Cristal testified that he only considered one service provider for performing the janitorial scope of work, PFMI.

> "Q.    Okay.  What subcontractors to perform the janitorial component did you consider?
>
> A.     I actually only considered one, and that was PFMI."

*See* Exhibit "A," p. 35 lines 3 through 7.

4.      Mr. Cristal also admitted that, in hindsight, he should have engaged a janitorial service provider other than PFMI.

> "Q.    Why—why do you think it would have been better to have ABM as a partner instead of PFMI?
>
> A.     Well, I thought it may not have fallen apart had ABM been a partner.
>        . . .
>
> Q.     And do you have a belief that ABM would have done better?
>
> A.     Couldn't have done any worse."

*See* Exhibit "A," p. 57 line 20 through p. 58 line 6.

5.      During the deposition of Mr. Cristal, EMCOR learned for the first time that PFMI's President, Greg Littlefield, paid EMCOR's former director thousands of dollars of "commission" for retaining PFMI as the janitorial subcontractor <u>while</u> Mr. Cristal was employed as a Director of EMCOR and owed his fiduciary obligations solely to EMCOR.

> "Q.    Okay. How much did [PFMI's President] Mr. Littlefield pay you as a commission for getting the BB&T work?
>
> A.     $2,000.00
>        . . .
>
> Q.     When did Mr. Littlefield pay you $2,000.00 for getting him on board the BB&T account?

3

A.    I think it was over a period of several months, while I was still working at
EMCOR with the knowledge of the people at EMCOR.

. . .

Q.    When would you have asked Greg for a commission for—

A.    After the contracts were signed.

Q.    So it would have been sometime summer of 2005?

A.    Whenever the contracts were signed.

Q.    And what was Mr. Littlefield's response?

A.    He didn't have a problem with it."

*See* Exhibit "A," p. 84 line 22 through p. 86 line 16.

Contrary to the testimony of Mr. Cristal, EMCOR's representatives had no knowledge of
PFMI's payment to Mr. Cristal for his role in hiring PFMI as a subcontractor.  *See* Exhibit "C,"
September 17, 2007, Affidavit of Raymon Stribling.

6.    Many months later, PFMI hired EMCOR's former Director of Business
Development as a sales representative for PFMI during the BB&T Project in or about May,
2006.  During the deposition, EMCOR also learned for the first time that Mr. Cristal's salary was
based upon revenue earned for PFMI.  Mr. Cristal admitted that his new salary and future
commissions were based upon the millions of dollars he "brought to PFMI" when Mr. Cristal
was a Director for EMCOR.

"Q.    Okay.  If you look at number 3, it says, 'Proposal and contracts brought to
PFMI prior – prior to my acceptance of employment count towards
revenues provided.  A contract is signed, examples BB&T and Colonial
Bank.' Does that refresh your recollection as to when this letter was sent?

A.    No.

Q.    So—

A.    The object was that [Mr. Littlefield] wanted me to do $4 million worth of

4

> business my first year.
>
> . . .
>
> I wanted him to count BB&T and Colonial toward that first 4 million. So
> in essence, my—my base, if you will, had already been fulfilled. He
> didn't want to pay me a commission until after 4 million and not including
> the 4 million."

See Exhibit "A," p. 92 line 6 through p. 93 line 8.

7.     In Mr. Cristal's March 21, 2005, "Employment Proposal Letter" to PFMI's

President, EMCOR's former Director of Business Development stated the following:

> "In retrospect we have been discussing and contemplating this scenario for over a
> year and a half. Obviously we both agree and realize that I can make a major
> contribution to your organization in a very short time."
>
> . . .
>
> "I am prepared and willing to do whatever is necessary for the betterment of
> PFMI."
> . . .
>
> "During the year and a half that we have been discussing my employment, I have
> demonstrated many attributes and abilities that make me the best choice for the
> PFMI Sales Team. These attributes virtually guarantee immediate success."

See Deposition Exhibit No. 68, attached hereto as Exhibit "D."

8.     BB&T terminated its purchase and service agreement with EMCOR that was

worth approximately $20 million in annual revenue. BB&T's Senior Vice President testified that

EMCOR likely would not have been terminated, if the janitorial services had been performed

properly.

> "Q.     Mr. Hondros, you had indicated previously that when—the period of time
>          when PFMI was performing the work there was a 70 percent level of
>          dissatisfaction; do you recall that?
>
> A.      Yes.
> . . .

Q.    Had the janitorial scope been properly performed, would you have recommended that EMCOR be terminated?

A.    If—if what you're asking me is the—if the services being provided by their subcontractors had been in the 80 percent approval level—would we have terminated them? It's not likely."

*See* August 29, 2007 Deposition of Randy Hondros, p. 78 line 21 through p. 79 line 17, attached as Exhibit "E" hereto.

9.    Although Mr. Cristal now works for another facilities service provider, PFMI and its President still sought business through Mr. Cristal as recently as three to four weeks ago.

"Q.    Do you continue to have contact today with [PFMI's President] Mr. Littlefield?

A.    Yes. He's looking for janitorial business from me.

Q.    What type of business is he looking for from you?

A.    Janitorial. Linc doesn't provide janitorial service. We subcontract. So he's basically looking for the same type of business that he provided to EMCOR.

Q.    When's the last time—or when did he contact you? And I mean Mr. Littlefield.

A.    I guess it's been about three weeks, maybe four weeks ago."

*See* Exhibit "A," p. 99 line 20 through p. 100 line 9.

10.    PFMI is currently suing EMCOR for fraud. It is outrageous that PFMI claims that it was defrauded by an EMCOR director, to whom PFMI paid a kickback, then hired as a member of the "PFMI Team", and through whom it continues to seek business to this day.

### III.    LEGAL ARGUMENT

### A.    Applicable Standard

Pursuant to Fed. R. Civ. P. 15(a):

> A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may still amend at any time within 20 days after it is served. Otherwise the party may amend the party's pleading only by leave of Court or by written consent of the adverse party; and <u>leave shall be freely given when justice so requires.</u> (Emphasis additional).

"[U]nless there is a substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial." *Burger King Corp. v. C.R. Waver*, 169 F.3d 1310, 1319 (11th Cir. 1999); *Nobles v. Rural Community Ins. Services*, 303 F.Supp.2d 1279 (M.D.Ala. 2004) (permitting amendment of complaint after uniform scheduling order deadline where plaintiff diligently pursued discovery).

### B.    There is Good Cause to Permit Amendment Because EMCOR Only Recently Discovered PFMI's President Paid EMCOR's Former Director Through a Third Party Deposition

EMCOR has diligently pursued discovery in this action and only learned of PFMI's and its President's tortious interference with EMCOR's business and contractual relations through third party deposition of Mr. Cristal during discovery. EMCOR then exercised due diligence and confirmed that no EMCOR employee knew and/or approved of PFMI's direct payment to Mr. Cristal. EMCOR had no way to anticipate that one of its former directors accepted thousands of dollars from PFMI for using PFMI as a janitorial subcontractor on the BB&T account during his service for EMCOR. PFMI did not produce any documents evidencing PFMI's direct payment to EMCOR's former Director of Business Development. Counsel for EMCOR only inquired concerning the issue because of a curious November 30, 2005 email (in the thousands of emails produced by EMCOR in this action) thanking PFMI's President for the "commission on BB&T,"

sent by "Alan Cristal, Director Customer Solutions Group EMCOR Facilities Services, Inc." *See* Deposition Exhibit 66, attached hereto as Exhibit "F."  Immediately after receiving the deposition transcript of Mr. Cristal, EMCOR sought leave to from this Court to amend.

**C.    EMCOR's Claim of Tortious Interference is Valid and Judicial Economy Will be Served by Permitting Amendment**

Alabama recognizes the tort of interference with contractual and/or business relations. *See Gross v. Lowder Realty Better Homes and Gardens*, 494 So.2d 590 (Ala. 1986).  The tort requires a showing of: "1) the existence of a contract or business relation; 2) defendant's knowledge of the contract or business relation; 3) intentional interference by the defendant with the contract or business relation; 4) the absence of justification for the defendant's interference; and 5) damage to the plaintiff as a result of defendant's interference." *Id.* at 597.

The admissions of EMCOR's former Director are sufficient alone to state a cause of action for tortious interference with the employment contact between EMCOR and its Director. Simply put, an employee cannot serve two masters.  Further, EMCOR's former director admits that he should have hired another janitorial service provider because a different janitorial service provider "couldn't have done worse" than PFMI.  Because EMCOR's director "only considered" PFMI, EMCOR ultimately lost the BB&T account that was worth approximately $20 million in gross annual revenue.

Addition of Mr. Littlefield is also proper because "it is a well settled rule in [Alabama] that a person is liable for the torts which he or she commits, regardless of the capacity in which that person acts." *Chandler v. Hunter*, 340 So.2d 818, 822 (Ala.Civ.App. 1976); *Inter-Connect, Inc. v. Gross*, 644 So.2d 867 (Ala. 1994).

Resolving this claim in this action serves judicial economy because if amendment is not permitted EMCOR will be required to file a separate action concerning the same facts and circumstances.

## IV.    CONCLUSION

WHEREFORE, EMCOR respectfully asks that it be granted leave to file its amended Counterclaim, and that PFMI's President be added as a party to this action.

JACK OWEN   (ASB-4805-N66C)
Attorney for Defendant
Emcor Facilities Services, Inc.

OF COUNSEL:
BALL, BALL, MATTHEWS & NOVAK, P.A.
Post Office Box 2148
Montgomery, Alabama  36102-2148
(334) 387-7680
(334) 387-3222 (Fax)
Email: CCOWEN@BALL-BALL.COM

and

Benjamin H. Sawyer
SUTHERLAND, ASBILL & BRENNAN, LLP
999 Peachtree Street, N.E.
Atlanta, GA 30309
(404) 853-8188
Email: BENJAMIN.SAWYER@SABLAW.COM

9

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing Motion upon counsel of record noted below, by placing the same in the U. S. Mail, first class postage prepaid and properly addressed.

DATED:        September 17, 2007


_____
OF COUNSEL

Mr. Rhon E. Jones
Ms. Scarlette M. Tuley
BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.
P.O. Box 4160
Montgomery, AL  36103-4160
Email:  RHON.JONES@BEASLEYALLEN.COM
Email:  SCARLETTE.TULEY@BEASLEYALLEN.COM

10