IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| PROFESSIONAL FACILITIES MANAGEMENT, INC., Plaintiff, | ) ) ) ) | |
| v. | ) ) | Civil Action No. 2:06CV1136-MHT |
| EMCOR FACILITIES SERVICES, INC., Defendant. | ) ) ) | |

**REPLY IN SUPPORT OF EMCOR FACILITIES SERVICES, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

EMCOR Facilities Services, Inc. ("EMCOR") hereby files this Reply to Professional Facilities Management, Inc.'s ("PFMI") Opposition to EMCOR's Motion for Partial Summary Judgment and states the following:

**I.   Introduction and Summary of Argument**

Entry of Partial Summary Judgment on PFMI's claims for misrepresentation (Counts II, III, and IV) is proper because PFMI failed to identify any false representation of fact made by EMCOR and PFMI failed to present evidence of any reasonable reliance on any alleged misrepresentation. If EMCOR had informed PFMI that the difference between gross square footage and net cleanable square footage "would probably be a wash" (which EMCOR denies), the *alleged* representation of EMCOR was only an opinion or prediction concerning a future event and not a representation concerning a material existing fact. As such, even assuming PFMI's allegation were true, which it is not, there can be no viable claim for misrepresentation based on the "probable" difference between gross square footage and net cleanable space.

PFMI also asserts that "EMCOR did not inform PFMI that the numbers were off 20%, nor did they inform PFMI to use those exhibits [Exhibit C and C.5] for pricing and billing purposes." This is pure nonsense. Neither EMCOR, PFMI, nor BB&T *knew* the net cleanable square footage prior to contract. Further, PFMI admits that it was paid, as part of its contract price, to accurately measure the actual amount of net cleanable square footage for all BB&T locations. *See* EMCOR's Brief in Support of Motion for Partial Summary Judgment, Statement of Undisputed Fact Nos. 4, 5, and 10 (Doc. 23).

Moreover, EMCOR did provide PFMI with all BB&T "estimates" of the unknown net cleanable square footage, including "Exhibit C and C.5," before PFMI started performing work. PFMI's corporate representative also admits that <u>EMCOR informed PFMI that the actual net square footage could potentially be 5.4 million square feet on March 24, 2005, almost six (6) months before PFMI even started work on the BB&T project</u>. *See* Response to PFMI's Statement of Undisputed Facts, No. 6, *infra*. This information was provided to PFMI by EMCOR's former Director of Business Development, Alan Cristal, to whom PFMI later paid thousands of dollars as a kickback for hiring PFMI as a janitorial subcontractor on the BB&T project. PFMI then hired EMCOR's former director as part of the "PFMI Team." *See* Response to PFMI's Statement of Undisputed Facts, No. 7, *infra*.

PFMI presented the Court with no evidence or citation of authority, and failed even to mention EMCOR's statute of frauds defense against PFMI's claim for breach of an alleged two-year oral contract. The Court should enter partial summary judgment on this issue because an alleged two-year oral contract is void as a matter of law and cannot support an action in contract or tort. Section 8-9-2, <u>Ala. Code</u> 1975; *Bruce v. Cole*, 854 So.2d 47, 58 (Ala. 2003) (affirming

entry of summary judgment on fraud claim because "an oral promise that is void by operation of the Statute of Frauds will not support an action against the promisor for promissory fraud.").

PFMI admits that it is only entitled to payment for net square footage actually cleaned. PFMI even contends that it "attempted to lower the amount they billed from gross to net." Further, PFMI admits "there was to be a 'true up'" based on the actual amount of net cleanable square footage. Accordingly, entry of partial summary judgment on Count I is proper and the jury can determine the amount of overpayment for which PFMI is responsible to reimburse EMCOR.

## II.    Response to PFMI's Statement of Undisputed Facts

1.    PFMI admits it is only entitled to payment for actual net square footage cleaned. In fact, PFMI even contends that it "attempted to lower the amount [PFMI] billed from gross to net." *See* PFMI's Opposition, p. 4 (Doc. 28). To date, however, PFMI has not reduced its claim to account for its admitted overpayment.

2.    PFMI does not dispute that the actual square footage of the BB&T branch locations was unknown at the time of contract and further admits it was paid to correctly measure the net cleanable square footage within the first 90 days of contract performance. *See* EMCOR's Brief in Support of Motion for Partial Summary judgment (Doc. 24), Statement of Undisputed Material Facts, Nos. 4, 5 and 10.

3.    PFMI admits that it failed to accurately measure the net cleanable square footage. *See* PFMI Opposition, p. 4 ("PFMI informed EMCOR that they were concerned a percentage of those [net cleanable square footage] measurements were inaccurate and wanted to remeasure.").

4.    PFMI concedes that it received overpayment based upon gross square footage "for months" and incorrectly contends it was "forced" to receive overpayment. *See* PFMI

3

Opposition, p. 4 (Doc. 28) ("PFMI was forced to continue billing on gross for months until EMCOR's mobile maintenance techs entered the project.")

5.  PFMI even admits that "there was to be a 'true up' of the janitorial payments once the net cleanable square footage measurements were complete." PFMI's Opposition, Statement of Undisputed Fact No. 15 (Doc. 28). PFMI further admits that "the 'true up' was to involve repayments to BB&T by PFMI for amounts billed after November 1, 2005, above the net cleanable square footage amount determined by (sic) measurement." PFMI's Opposition, Statement of Undisputed Fact No. 16 (Doc. 28).

6.  Without citation, PFMI incorrectly states that "Despite having Exhibit C and C.5, EMCOR did not inform PFMI that the numbers were off 20%, nor did they inform PFMI to use those exhibits for pricing and billing purposes." PFMI's Opposition, p. 2 (Doc. 28).

The record reflects that the actual net cleanable square footage was unknown and that PFMI was paid to accurately measure each BB&T branch location. On March 24, 2005, almost four (4) months before the execution of the original PFMI/EMCOR contract and approximately six (6) months before PFMI began performing its scope of work, EMCOR's Director of Business Development, Alan Cristal, provided PFMI with "Exhibit C and C.5" in a correspondence that informed PFMI as follows:

> "The original adjusted square footage has been modified to reflect usable/cleanable square feet. <u>Your pricing quotes should be based upon this cleanable square footage which reflects reduction in space</u> to account for equipment and mechanical rooms, electrical and storage closets, and vertical penetration. <u>These space reductions reduce the total square footage to an estimated 5.4 million square feet. Pricing may be adjusted ongoing if actual usable/cleanable square feet changes.</u>"

See Deposition Exhibit 22 (emphasis additional), attached as Exhibit "A" hereto.

4

After reviewing this contemporaneous project record, James Wohlers, PFMI's Fed. R. Civ. P. 30(b)(6) corporate representative admitted that EMCOR correctly informed PFMI that the actual square footage might potentially be 5.4 million square feet:

> "Q.   Fair statement, EMCOR didn't hide Exhibit C from PFMI, did they?"
> [Objection]
> A.   It doesn't appear so, no.
> Q.   They actually provided it, didn't they?
> A.   Yes.
> Q.   Okay. And at least as of March 24, 2005, BB&T was telling EMCOR PFMI that the square footage numbers might be 5.4 million correct?
> [Objection]
> A.   Yes, it appears."

Fed. R. Civ. P. 30(b)(6) Deposition of James Wohlers, p. 62 lines 8 through 19, attached as Exhibit "B" hereto.

7.   Without EMCOR's knowledge, PFMI paid EMCOR's Director of Business Development thousands of dollars for his role in hiring PFMI as the janitorial subcontractor for the BB&T account, while he was an acting director for EMCOR. PFMI then hired Mr. Cristal as part of the "PFMI Team." *See* EMCOR's Motion to Amend Counterclaim and Brief in Support (Doc. 34); EMCOR's Brief in Support of Motion to Amend Counterclaim (Doc. 35).

8.   PFMI failed to identify any material misrepresentation of fact made by an EMCOR representative. Instead, PFMI contends that "in discussions with PFMI, EMCOR informed [PFMI] that the difference [between gross square footage and net cleanable square footage] would probably be a wash." *See* PFMI's Opposition, p. 3 (emphasis added). EMCOR strongly disputes this representation was ever made or that PFMI could reasonably rely on patent speculation concerning measurements that PFMI was going to be paid to perform. Regardless of these facts, an opinion of what would "probably" be is not a false representation of fact.

9.  EMCOR disputes that PFMI was "forced" to receive overpayment based on gross square footage instead of net cleanable square footage "for months" and further disputes that PFMI can seek damages in tort or contract for receiving payment it now admits PFMI was not due as a matter of law. *See* PFMI's Opposition, p. 4 (Doc. 28).

10. PFMI incorrectly states that "EMCOR had no incentive to tell PFMI the truth about the 20% reduction in square footage because EMCOR was not paid based on square footage." PFMI's Opposition, Statement of Undisputed Fact No. 17 (Doc. 28). The record, however, shows that the actual square footage was <u>unknown</u>. The record also shows that EMCOR has been required to reimburse BB&T $291,335.79 for overpayments to PFMI, as well as for BB&T property stolen by a family member of one of PFMI's sub-tier vendors during cleaning hours. *See* Second Amendment to Purchase and Service Master Agreement, Deposition Exhibit 44, attached as Exhibit "C" hereto.

11. PFMI does not dispute that there is no signed, written document memorializing an alleged two-year agreement between PFMI and EMCOR after EMCOR terminated its original contract with PFMI. Further, PFMI does not even mention EMCOR's statute of frauds defense in its Opposition.

### III.  Legal Argument

**A.  PFMI Fails to Identify One False Material Representation of Fact and Fails to Show Reasonable Reliance Upon Any Alleged EMCOR Misrepresentation**

1. <u>PFMI's contention that EMCOR represented that "the difference [between the gross square feet and the net cleanable square footage of the BB&T branches] would *probably* be a wash" is false, but even if it were true, this alleged "misrepresentation" is a statement of opinion concerning a future event that is not actionable in tort.</u>

"It is axiomatic that mere statements of opinion are not material facts upon which actions for legal fraud can be maintained." *Jones v. McGuffin*, 454 So.2d 509, 512 (Ala. 1984). In Alabama, even professional opinions will not support an action for deceit, fraud, and/or a claim of misrepresentation. *See id.* (structural engineer's statement that residence was "in excellent structural condition was a mere expression of professional opinion which could not form the basis of an innocent misrepresentation action."); *see also P.A.M. Transport, Inc. v. Arkansas Blue Cross and Blue Shield*, 868 S.W.2d 33, 36 (Ark. 1993) ("In the context of negotiating a contract, a misrepresentation sufficient to form the basis of a deceit action may be made by one prospective party to another and <u>must relate to a past event or a present circumstance, but not a future event</u>. 'An assertion limited to a future event may be a promise that imposes liability for breach of contract or a mere prediction that does not, but it is not a misrepresentation as to that event.'") (*quoting* Farnsworth on Contracts § 4.11 (1990)) (emphasis additional).

No EMCOR representative informed PFMI that the difference between gross square footage and net cleanable square footage "would probably be a wash." Further, no reliance on this representation could be reasonable because PFMI admits that the actual square footage was unknown at the time of the original PFMI/EMCOR Contract, and no damage could have resulted because PFMI admits that <u>it</u> agreed to perform the actual measurements of the BB&T branch banking locations. *See Borsarge Offshore, LLC v. Compass Bank*, 943 So.2d 782, 786-787 (Ala. 2006).

Compounding matters, PFMI even admits that it failed to accurately measure "30% to 40%" of the BB&T locations. *See* EMCOR's Brief in Support of Motion for Partial Summary Judgment, Statement of Undisputed Fact No. 9. These facts notwithstanding, PFMI's incorrect allegation that EMCOR opined that there would be no difference between gross and net

7

cleanable square footage is simply not a misrepresentation of fact as a matter of law. *See McGuffin*, 454 So.2d at 512.

    2.    <u>PFMI's incorrect statement that it was "forced" to receive overpayment based on gross square footage "for months" cannot, as a matter of law, support a claim for misrepresentation.</u>

While EMCOR firmly disagrees that PFMI was "forced" to receive overpayment based on gross square footage "for months," it is absurd to suggest that a claim for damages for fraud could ever exist for receiving and keeping payment that is admittedly not owed. PFMI admits that the actual amount of net cleanable square footage controls its recovery and further admits that the parties agreed to "true up" PFMI's payment based on the actual amount of net cleanable square footage. *See* PFMI's Opposition, Statement of Undisputed Facts Nos. 15 and 16 (Doc. 28); EMCOR's Brief in Support of Motion for Partial Summary Judgment, Statement of Undisputed Fact No. 10 (Doc. 23).

The focus of PFMI on <u>billing</u> for cleaning work done should not obscure the undisputed facts that: PFMI contracted with EMCOR to be <u>paid</u> for cleaning work based on net cleanable space; the total net cleanable space was unknown by both PFMI and EMCOR; PFMI knew that EMCOR did not know the net cleanable space; <u>and</u> PFMI contracted to determine the net cleanable space.

For what purpose, other than to verify the amount of payment due to be made by EMCOR to PFMI for cleaning services, was there any need to determine the net cleanable space?

**B.    PFMI Presented No Evidence Or Argument Concerning EMCOR's Statute of Frauds Defense and Judgment Should Be Entered On All Tort and Contract Claims Arising From Breach of Alleged Two-Year Oral Contract**

PFMI admits that there is no written contract for an alleged two-year agreement between EMCOR following EMCOR's termination of the original written agreement with PFMI. *See*

EMCOR's Brief in Support of Motion for Partial Summary Judgment, Statement of Undisputed Fact No 20 (Doc. 23). In its Opposition, PFMI fails to present the Court with any evidence or citation of authority, and fails to even address the fact that its alleged two-year oral contract is barred by the Alabama statute of frauds.

It is black letter Alabama law that a two-year oral agreement is void. Section 8-9-2, <u>Ala. Code</u> 1975. Further, as the Alabama Supreme Court recently held, no tort action may be based upon an alleged agreement that is barred by the statute of frauds. *Bruce v. Cole*, 854 So.2d 47, 58 (Ala. 2003) (affirming entry of summary judgment on fraud claim because "an oral promise that is void by operation of the Statute of Frauds will not support an action against the promisor for promissory fraud.") Accordingly, the Court should enter partial summary judgment against PFMI on all tort and contract claims arising from the alleged two year oral agreement because these claims are barred as a matter of law.

**C.     PFMI Agrees That its Entitlement is Controlled by the Actual Net Square Footage Cleaned and Partial Summary Judgment on Count I Should Be Entered.**

PFMI agrees that its entitlement to recovery in this action is controlled by the actual amount of square footage it cleaned. PFMI even contends that it unsuccessfully attempted to "lower the amount [PFMI] billed from gross to net" but was "forced" to receive overpayment based on gross square footage "for months." In its Opposition, PFMI also admits that the parties agreed to correction of PFMI's payment or "true up" PFMI's payments based on accurate net cleanable square footage measurements. *See* Response to PFMI's Statement of Undisputed Facts No. 5. Accordingly, there is no disputed issue of fact and entry of partial summary judgment is proper on Count I of PFMI's breach of contract claim.

## IV.  Conclusion

THE FOREGOING CONSIDERED EMCOR respectfully requests that this Court: 1) enter summary judgment in its favor on Counts II, III, and IV of Plaintiff's Complaint; 2) enter summary judgment on tort and contract claims arising from Plaintiff's alleged two-year oral agreement that is barred by the statute of frauds as a matter of law; and 3) enter partial summary judgment on PFMI's breach of contract claim and hold that the contract price is controlled by the actual amount of net cleanable square footage.

/s/ Jack Owen
JACK OWEN   (ASB-4805-N66C)
Attorney for Defendant
Emcor Facilities Services, Inc.

OF COUNSEL:
BALL, BALL, MATTHEWS & NOVAK, P.A.
Post Office Box 2148
Montgomery, Alabama  36102-2148
(334) 387-7680
(334) 387-3222 (Fax)
Email: CCOWEN@BALL-BALL.COM

and

Benjamin H. Sawyer
SUTHERLAND, ASBILL & BRENNAN, LLP
999 Peachtree Street, N.E.
Atlanta, GA 30309
(404) 853-8188
Email: BENJAMIN.SAWYER@SABLAW.COM

## CERTIFICATE OF SERVICE

I hereby certify that on September 20, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

/s/ Jack Owen
OF COUNSEL

Mr. Rhon E. Jones
Ms. Scarlette M. Tuley
BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.
P.O. Box 4160
Montgomery, AL 36103-4160
Email: RHON.JONES@BEASLEYALLEN.COM
Email: SCARLETTE.TULEY@BEASLEYALLEN.COM

**Jim Wohlers**

| | |
|---|---|
| From: | Alan Cristal [alan_cristal@emcorgroup.com] |
| Sent: | Thursday, March 24, 2005 10:31 AM |
| To: | Debi Crosby; Doug Rowles; Cathy Hice; Mark Smith; Steven T King; Eddie Dunlap; Nicole Stoner; John Wagner |
| Cc: | littlefieldg@pfmi.net; wohlersj@pfmi.net; KHutcheson@uslawns.com |
| Subject: | Update to BB&T's Maintenance Manager RFP 3/23/05 |
| Importance: | High |
| Follow Up Flag: | Follow up |
| Flag Status: | Completed |
| Attachments: | Exhibit C - consolidated C.1 thru C.6 - Cost Proposal - REVISED 032305.xls |


Exhibit C -
consolidated C.1 t...

```
                FYI

Alan B. Cristal
Director, Business Development
EMCOR Facilities Services, Inc.
770.444.3355 (Office)
800.768.2472 (Office)
770.805.2501 (Fax)
404.395.8678 (Cell)
Alan_Cristal@emcorgroup.com
www.emcorgroup.com
----- Forwarded by Alan Cristal/EFS/EMCORGROUP on 03/24/2005 11:19 AM -----

                      "Llewellyn,
                      Matthew"              To:       'Alan Cristal'
<alan_cristal@emcorgroup.com>
                      <MLlewellyn@BBand     cc:
                      T.com>                Subject:  Update to BB&T's Maintenance
Manager RFP 3/23/05

                      03/24/2005 11:19
                      AM




Mr. Cristal:


Please read below for changes to the attached Exhibit.  Please contact me if you have any
questions in regards to these revisions.


REVISED EXHIBITS: C.5 (Janitorial Pricing by Site) and EXHIBIT C.2 (Sample Site Survey
Pricing)


The attached, "Exhibit C - consolidated C.1 thru C.6 - Cost Proposal", contains revisions
to the exhibits noted above.  Please replace the original "Exhibit C - consolidated C.1
thru C.6 - Cost Proposal" with this workbook.  Exhibits C.2 and C.5, which are tabs within
the master exhibit, have had square footage revised.  The original adjusted square footage
```

EXHIBIT A

1


DEFENDANT'S EXHIBIT 22

PFMI 000713

has been modified to reflect usable/cleanable square feet. Your pricing quotes should be based upon this cleanable square footage which reflects reduction in space to account for equipment and mechanical rooms, electrical and storage closets, and vertical penetration. These space reductions reduce the total square footage to an estimated 5.4 million square feet. Pricing may be adjusted ongoing if actual usable/cleanable square feet changes.

NOTE for EXHIBITS: C.5 (Janitorial Pricing by Site) and EXHIBIT A (Location Identification Information)

Locations subject to minor changes upon final review prior to contract signing and ongoing as a result of mergers, consolidations, closings, and/or openings.

<<Exhibit C - consolidated C.1 thru C.6 - Cost Proposal - REVISED 032305.xls>> Sincerely, Matt

Matt Llewellyn
BB&T - Support Services
2825 Reynolda Road
Ph: 336.703.5683
Fx: 336.703.5649
mllewellyn@bbandt.com (See attached file: Exhibit C - consolidated C.1 thru C.6 - Cost Proposal - REVISED 032305.xls)

This message is for the named person's use only. It may contain confidential, proprietary or legally privileged information. No confidentiality or privilege is waived or lost by any mistransmission. If you receive this message in error, please immediately delete it and all copies of it from your system, destroy any hard copies of it and notify the sender. You must not, directly or indirectly, use, disclose, distribute, print, or copy any part of this message if you are not the intended recipient.

PFMI 000714

MERRILL LEGAL SOULTIONS
Court Reporting*Legal Videography*Trial Services

Page 1

1  IN THE UNITED STATES DISTRICT COURT FOR
2  THE MIDDLE DISTRICT OF ALABAMA
3  NORTHERN DIVISION
4
5  PROFESSIONAL FACILITIES
6  MANAGEMENT, INC.,
7       Plaintiff,
8  vs.                    CIVIL ACTION NO.
9                         2:06CV
10 EMCOR FACILITIES SERVICES,
11 INC.; AND A, B, AND C, AS
12 FICTITIOUS PARTIES,
13      Defendants.
14      *    *    *    *    *
15      DEPOSITION OF JIM WOHLERS,
16 taken pursuant to notice and stipulation
17 on behalf of the Defendant, in the offices
18 of Beasley, Allen, Crow, Methvin, Portis &
19 Miles, 250 Commerce Street, Montgomery,
20 Alabama, before Nicole Paulk, Certified
21 Shorthand Reporter and Notary Public in
22 and for the State of Alabama at Large, on
23 August 10, 2007, commencing at 8:17 a.m.

COPY

EXHIBIT B

MERRILL LEGAL SOULTIONS
Court Reporting*Legal Videography*Trial Services

Page 60

```
 1            e-mail address?
 2   A.       Yes.
 3   Q.       Okay.  And at the time, Mr. Cristal was an
 4            EMCOR employee, right?
 5   A.       Yes.
 6   Q.       And he was the EMCOR representative?
 7   A.       Yes.
 8   Q.       Okay.  If you would, could you -- and I'm
 9            sorry, the e-mail is dated March 24, 2005.
10            If you would, could you read from Exhibit
11            22, starting here?
12   A.       (As read:) "Mr. Cristal, please read below
13            for changes to the attached exhibit.
14            Please contact me if you have any
15            questions in regards to these revisions.
16            Revised Exhibits C dot 5, janitorial
17            pricing by site, and Exhibit C dot 2,
18            sample site survey pricing.  The attached
19            Exhibit C consolidated C dot 1 through C
20            dot 6, cost proposal, contains revisions
21            to the exhibits noted above.  Please
22            replace the original Exhibit C,
23            consolidated C dot 1 through C dot 6, cost
```

Page 61

1   proposal with this workbook.  Exhibits C
2   dot 2 and C dot 5, which are tabs within
3   the master exhibit, have had square
4   footage revised.  The original adjusted
5   square footage has been modified to
6   reflect usable cleanable square feet.
7   Your pricing quotes should be based upon
8   this cleanable square footage which
9   reflects reduction in space to account for
10  equipment and mechanical rooms, electrical
11  and storage closets, and vertical
12  penetration.  These space reductions
13  reduce the total square footage to an
14  estimated 5.4 million square feet.
15  Pricing may be adjusted ongoing if actual
16  usable cleanable square feet changes.
17  Note for Exhibits C dot 5, janitorial
18  pricing by site, and Exhibit A, location
19  identification information.  Locations
20  subject to minor changes upon final review
21  prior to contract signing and ongoing s a
22  result of mergers, consolidations,
23  closings, and/or openings.  Exhibit C,

MERRILL LEGAL SOULTIONS
Court Reporting*Legal Videography*Trial Services

Page 62

1    consolidated C dot 1 through C dot 6, cost
2    proposal, revised 03/23/05 dot XLS,
3    sincerely, Matt." And it's signed -- or
4    the electronic signature is Matt
5    Llewellyn.
6  Q.  Who is Matt Llewellyn?
7  A.  A BB&T employee.
8  Q.  Fair statement, EMCOR didn't hide Exhibit
9    C from PFMI, did they?
10         MS. TULEY:  Object to the form.
11 A.  It doesn't appear so, no.
12 Q.  They actually provided it, didn't they?
13 A.  Yes.
14 Q.  Okay. And at least as of March 24, 2005,
15   BB&T was telling EMCOR PFMI that the
16   square footage numbers might be 5.4
17   million, correct?
18         MS. TULEY:  Object to the form.
19 A.  Yes, it appears.
20 Q.  Okay. And the contract in this case was
21   entered into July 11, 2005 -- or strike
22   that -- July 13, 2005?
23 A.  I'm not sure on the date, but that sounds

**EXHIBIT C**

SECOND AMENDMENT TO PURCHASE AND SERVICE MASTER AGREEMENT

THIS SECOND AMENDMENT TO PURCHASE AND SERVICE MASTER AGREEMENT (this "Second Amendment"), effective as of August 1, 2006, by and between Branch Banking and Trust Company, 200 West Second Street, Winston-Salem, NC 27101-4011 (hereinafter "BB&T") and EMCOR Facilities Services, 320 23rd Street South, Arlington, VA 22202 (hereinafter "Supplier").

WITNESSETH:

WHEREAS, BB&T and Supplier entered into a certain Purchase and Service Master Agreement for Facilities Maintenance and Management, including the exhibits attached thereto, dated as of the 12th day of July, 2005 (collectively the "Agreement"), and subsequently amended the Agreement by instrument dated November 11, 2005; and

WHEREAS, BB&T and Supplier wish to further amend the Agreement as hereinafter provided.

NOW THEREFORE, in consideration of the mutual promises and covenants herein contained, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, BB&T and Supplier mutually agree as follows:

1. Exhibit A to the Agreement is hereby deleted in its entirety and replaced by Exhibit A attached hereto.

2. Within five (5) days of the execution of this Second Amendment by Supplier, Supplier shall pay to BB&T the amount of $178,696.35 attributable to overpayments for janitorial services.

3. BB&T agrees to cooperate with Supplier's insurance carrier in an attempt to resolve losses in the amount of $112,639.44 suffered by BB&T as a result of theft of a proof bag from BB&T's location at 215 West Broad Street, Elizabethtown, North Carolina. If Supplier's insurance carrier fails to resolve such losses by paying the foregoing amount to BB&T within thirty (30) days of the execution of this Second Amendment by Supplier, Supplier shall make such payment to BB&T.

4. Any payment not made by Supplier when due under the terms of this Second Amendment shall bear interest from August 1, 2006, at the rate of 8% per annum.

5. Exhibit D to the Agreement is hereby deleted in its entirety and replaced by Exhibit D attached hereto.

6. BB&T will use its best efforts to provide trash hauling service at all locations where such service is available. Supplier agrees to assist BB&T in identifying locations where trash hauling service is not being used but is available, and


EXHIBIT 44

- 1 -

BB&T will attempt to get such service activated. In any location where trash removal service is not available or supplied by BB&T, Supplier shall cause such trash removal to be provided to BB&T by Supplier's subcontractors. BB&T will reimburse Supplier for the reasonable costs of such additional services; provided, however, that BB&T shall only be obligated to reimburse Supplier for such additional services where BB&T has approved the charge for such service in writing in advance of the service being provided.

7. Supplier shall resolve any existing claims by subcontractors for trash hauling services provided prior to the effective date of this Second Amendment, and agrees to indemnify and hold BB&T harmless from such claims, including costs and reasonable attorney's fees incurred by BB&T with respect to such claims.

8. Exhibit L to the Agreement is hereby deleted in its entirety and replaced by Exhibit L attached hereto.

9. Exhibit O to the Agreement is hereby deleted in its entirety and replaced by Exhibit O attached hereto.

10. Except as amended hereby, all the terms and provisions of the Agreement are hereby ratified, reaffirmed and remain in full force and effect. In the event that there is a conflict between the terms and provisions of the Agreement and the terms and provisions of this Second Amendment, the terms and provisions of this Second Amendment shall control.

11. BB&T and Supplier represent and warrant to each other that each has full authority to execute this Second Amendment and that the joinder or approval of any person or entity to this Second Amendment or with respect to BB&T's or Supplier's execution of this Second Amendment is not required.

IN WITNESS WHEREOF, BB&T and Supplier have set their signatures to this Second Amendment as of the date set forth under their signatures.

BB&T:
Branch Banking and Trust Company

By: Randy Hondros
Title: Senior Vice President

Date: _____

SUPPLIER:
EMCOR Facilities Services

By: ~~Gregory J. Swanberg~~ EDWARD DABLOWSKI
Title: ~~Vice President & GM~~ SR VP & CFO

Date: Aug 8, 2006

- 2 -