IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| PROFESSIONAL FACILITIES MANAGEMENT, INC., Plaintiff, | ) ) ) ) | |
| v. | ) ) | Civil Action No. 2:06CV1136-MHT |
| EMCOR FACILITIES SERVICES, INC., Defendant. | ) ) ) | |
| v. | ) ) | |
| PROFESSIONAL FACILITIES MANAGEMENT, INC. | ) ) ) | |
| and | ) ) | |
| GREG LITTLEFIELD Counterclaim Defendants | ) ) ) | |

**BRIEF IN SUPPORT OF SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT
ON COUNTS I, V, AND VI
AND
STATEMENT OF UNDISPUTED MATERIAL FACTS**

　　　　EMCOR Facilities Services, Inc. ("EMCOR") hereby files this Brief in Support of

Motion for Partial Summary Judgment and shows the Court as follows:

**I.     Introduction and Factual Background**

　　　　This action arises from Plaintiff Professional Facilities Management, Inc.'s ("PFMI" or

"Plaintiff") failure to perform its obligations under a janitorial service agreement with Defendant

EMCOR Facilities Services, Inc. ("EMCOR") for Branch Banking & Trust ("BB&T") facilities

located throughout the United States.  On or about July 1, 2005, EMCOR entered into a Master

Purchase and Service Agreement with BB&T (the "BB&T Contract") for the provision of certain maintenance, landscaping, snow-removal, and janitorial services. The BB&T Contract established a three-year term of EMCOR's contract performance from July 1, 2005, through June 30, 2008, and further established that EMCOR was entitled to revenues exceeding $18 million for performance of this work.

EMCOR subcontracted all of its janitorial services scope of work under the BB&T Contract to PFMI pursuant to an agreement memorialized on or about July 13, 2005 (the "PFMI Agreement"). PFMI did not self-perform any of the janitorial work and elected to subcontract its entire scope of work to other sub-tier vendors that are not part of this action. PFMI has settled and been released from liability (or had its liability to these subcontractors capped) in amounts far less (approximately 35%) than PFMI is seeking from EMCOR in this action for these claims.

## II.    Statement of Undisputed Material Facts

1.    PFMI did not self-perform any janitorial work related the BB&T Project. *See* Fed. R. Civ. P. 30(b)(6) deposition of James Wohlers, p. 88 line 18 through p. 89 line 1, Exhibit "A" hereto:

> "Q.    And I believe it's true, is it not, that PFMI didn't actually perform any cleaning, as far as self-performing this work?
>
> A.    That's correct.
>
> Q.    Okay. So it was PFMI's job to manage these subcontractors?
>
> A.    Yes, sir."

2.    Plaintiff has settled and/or been released from liability for claims of these sub-tier contractors. *See* Fed. R. Civ. P. 30(b)(6) deposition of Greg Littlefield, p. 51 lines 4 through 13:

> "Q.    Have you entered into any other settlement agreements with vendors?

A.    At this point, we do have verbal or written agreement with all our vendors, to the best of my knowledge.

Q.    How much has PFMI paid these vendors as a result of settlement negotiations?

A.    I—I couldn't tell you without reflecting back, going back to our documentation."

3.    On September 20, 2007, during the deposition of PFMI's Fed. R. Civ. P. 30(b)(6) corporate representative on damages, Plaintiff produced its settlement agreements with its subcontractors.  These agreements showed PFMI's maximum potential exposure to these entities is $343,932.11, which is much less (approximately 65% less) than the $976,460.00 claimed against EMCOR in Plaintiff's expert report.  PFMI's settlement agreements do not contain confidentiality provisions, but were placed under seal at the request of Plaintiff during PFMI's deposition.  The settlement agreements were marked as Exhibit 94 to the deposition of PFMI's corporate representative on damages.[1]  *See* Fed. R. Civ. P. 30(b)(6) deposition of Larry Capiluto, p. 118 line 4 through p. 119 line 14, Exhibit "C" hereto; *see also* E. Larry Capiluto's "Report on Financial Damages", Deposition Exhibit No. 93, p. 3, Exhibit "D" hereto.

4.    PFMI's 30(b)(6) corporate representative on damages admits that PFMI has no knowledge of an agreement between EMCOR and PFMI providing for the recovery of attorney's fees for breach of the PFMI Agreement or otherwise.  *See* Exhibit "C", p. 30 lines 7 through 14:

"Q.    Are you aware of any provision of the contract between EMCOR and PFMI that provides for recovery of attorney's fees?

A.    No, I am not.

---

[1]  At the request of counsel for Plaintiff PFMI, the contents of deposition Exhibit 94 were placed under seal (Capiluoto depo., pp. 118-119, Exhibit "C" attached hereto).  EMCOR tenders this Exhibit 94 to the Court in support of its Motion for Partial Summary Judgment in a sealed envelope marked "Exhibit 94 – Sealed at Request of Counsel for Plaintiff Professional Facilities Management, Inc," attached to its Motion to File Exhibit Under Seal, filed contemporaneously herewith.

> Q.    Did you make any investigation to determine whether EMCOR agreed to payment of attorney's fees?
>
> A.    No, I did not."

5.    PFMI's June 26, 2007, expert report also states: "*Additional trash removal expenses of approximately $88,000 have not been included.  We will revise the loss to include these amounts when documentation is available." *See* Exhibit "D", p. 4.

6.    PFMI failed to produce any documentation or other evidence supporting "approximately $88,000" of "additional trash removal expenses" during discovery.

7.    Plaintiff's designated corporate representative on damages on September 20, 2007, had no opinions or knowledge concerning the $88,000 referenced in Plaintiff's expert report.  *See* Exhibit "C", p. 80 line 8 through p. 81 line 7:

> "Q.    And as you sit here today, have you—and there's asterisks by your direct trash removal expenses not recorded, and the asterisk reads, additional trash removal expenses of approximately $88,000 have not been included; will revise to include when documentation is available.  Did I read that correctly?
>
> A.    Yes.
>
> Q.    Okay.  Next question is, have you received documentation supporting $88,000 for trash removal?
>
> A.    Not at this date.
>
> Q.    So fair statement, without supporting documentation, you can't have an opinion on that?
>
> A.    That's correct.
>
> Q.    And as PFMI's corporate representative on damages, you don't have an opinion on that as you sit here today?
>
> A.    Well, my opinion is until we – no, I don't have an opinion on that as we sit here today."

### III.    Argument and Citation of Authority

### A.    Standard of Review

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Davis v. Dorsey*, 2007 WL 2007952, *1 (M.D.Ala. 2007)(quoting Fed. R. Civ. P. 56(c)); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). After the moving party informs the court of the basis for the summary judgment motion, the non-moving party has the burden to demonstrate why summary judgment would not be proper. *Id.* An entry of summary judgment is mandatory "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

### B.    Legal Argument

   1.    Plaintiff's Settlement of its Potential Liability to "All" Subcontractors Limits PFMI's Recovery for These Claims in this Action.

PFMI subcontracted all its scope of work to other entities that actually performed the janitorial work required by the PFMI Agreement. *See* Statement of Undisputed Material Facts No. 1. These "pass-through" claims are being asserted against EMCOR through PFMI's privity of contract with EMCOR in the amount of $976,460.00. *See* E. Larry Capiluto's "Report on Financial Damages", Deposition Exhibit No. 93, p. 3, Exhibit "D" hereto. PFMI has settled its potential liability for these subcontractor claims for $343,932.11 approximately thirty five percent (35%) of the amount PFMI seeks from EMCOR for these claims. *See* Statement of Undisputed Material Facts Nos. 2 and 3.

Plaintiff PFMI cannot seek recovery far in excess of the amount of its potential liability to these entities. *See Department of Transportation v. Claussen Paving Company*, 273 S.E.2d 161 (Ga. 1980); *see also Raymer v. Foster & Cooper, Inc.*, 393 S.E.2d 49, 51 (Ga.App. 1990) (permitting contractor recovery of subcontractor "pass-through" claims to the extent contractor "agree[d] to 'pass on' its recovery to its subcontractor."); *National American Ins. Co. v. Boh Bros. Construction Co., Inc.*, 700 So.2d 1363 (Ala. 1997) (surety entitled to subrogation to the extent of payment of contractor's liability to subcontractors even though contractor failed to qualify to do business in Alabama and could not recover damages caused by the owner); *Impresa Constuzioni Geom. Garufivi v. United States*, 61 Fed. Cl. 175 (2004) (absence of proof of janitorial general contractor's liability to subcontractor precluded recovery of janitorial bid proposal losses of subcontractor).

The *Claussen* case is instructive. In *Claussen*, a prime contractor sought "as a matter of law to recover in behalf of its subcontractors the sums they (not [the prime contractor]) lost as a result of the difference between the work that was required to be done to complete the project and the work as represented to the bidders in the bidding documents." *Id.* at 810. The Georgia Supreme Court rejected the prime contractor's position holding that recovery of amounts for the subcontractor's work was precluded "unless the prime contractor goes further and shows that he somehow is responsible to the subcontractor for those damages." *Id.* at 810-811. The *Claussen* court ultimately rejected the prime contractor's claim for its subcontractor's work because there was no evidence that the prime contractor would have "to pass on" to the subcontractor the amount of recovery it obtained. *Id.*

As in *Claussen*, PFMI seeks recovery based on information allegedly not disclosed by EMCOR in the original bid package, which PFMI contends increased its cost of work. *See* Complaint, ¶ 59 ("When EFS [EMCOR] provided the bid package it had to (sic) duty to provide accurate information in that bid package. In particular, EFS had a duty to disclose all the work expected of the bidder."); Complaint, ¶ 63 ("PFMI incurred greater expense for trash disposal and has not been paid by EFS for this service").

Plaintiff PFMI has capped its liability to its sub-tier contractors and is only responsible to these entities for approximately thirty five percent (35%) of the amount sought from EMCOR for these claims. As a matter of law, PFMI is not entitled to recover amounts in excess of its potential liability to these subcontractors.

> 2. PFMI's Claim for Attorney's Fees is Barred Because Plaintiff's Designated Corporate Representative on Damages Admits the Parties Never Agreed Concerning the Recovery of Attorney's Fees in the Event of a Breach of Contract.

"In Alabama, attorney's fees are recoverable only where authorized by statute, when provided in a contract, or by special equity, such as in a proceeding where the efforts of an attorney create a fund out of which fees may be paid." *King Development & Realty, Inc. v. Eslami*, 964 So.2d 51, 57 (Ala. Civ. App. 2007). EMCOR and PFMI did not enter into a written contract or other agreement that provided for the recovery of attorney's fees incurred as a result of a breach. PFMI's Fed. R. Civ. P. 30(b)(6) corporate designee on damages admits that PFMI is not aware of any such agreement and PFMI made no investigation concerning an agreement for the recovery of attorney's fees. *See* Statement of Undisputed Material Facts No. 4. Thus, partial summary judgment should be entered on Plaintiff's claim for attorney's fees incurred as a result of EMCOR's alleged breach.

3.   Plaintiff's Claim for $88,000 for "Additional Trash Removal Expenses" Must Be Excluded Because Plaintiff Failed to Present Any Evidence of These Expenses and Plaintiff's Corporate Representative on Damages Admits PFMI has no Opinion Concerning this Claim.

PFMI's expert report states: "*Additional trash removal expenses of approximately $88,000 have not been included. We will revise the loss to include these amounts when documentation is available." PFMI failed to produce any evidence related to this potential claim. PFMI's Fed. R. Civ. P. 30(b)(6) corporate representative on damages admitted that PFMI has no opinion or knowledge concerning PFMI's entitlement to damages for this potential $88,000 claim. *See* Statement of Undisputed Facts Nos. 6 and 7. EMCOR would be unfairly prejudiced if PFMI is permitted to assert these amounts at trial and PFMI should be precluded from asserting these amounts against EMCOR. *See KW Plastics v. U.S. Can Co.*, 131 F.Supp.2d 1289, 1295 (M.D.Ala. 2001) ("Even if McGowan's unjust enrichment calculations were admissible – which they are not – they are due to be excluded because they constitute an eleventh hour ambush upon [defendant].").

## IV.   Conclusion

WHEREFORE, Defendant EMCOR respectfully asks the Court to 1) enter partial summary judgment against Plaintiff PFMI on Counts I, V, and VI, limiting PFMI's recovery for these subcontractor claims to $343,932.11, which is the amount that PFMI is potentially liable to its subcontractors; 2) preclude Plaintiff's claim for attorney's fees against EMCOR and strike this claim from Plaintiff's expert report; and 3) hold that Plaintiff may not present evidence concerning $88,000 for "*Additional trash removal expenses" at trial because Plaintiff failed to present any evidence in support of this claim during over one year of discovery and PFMI's

designated corporate representative on damages had no opinion or knowledge concerning this potential claim during PFMI's deposition.

Respectfully submitted this 11th day of February, 2007,

/s/ Benjamin Sawyer
Benjamin H. Sawyer
Attorneys for Defendant
EMCOR Facilities Services, Inc.

OF COUNSEL:
SUTHERLAND, ASBILL & BRENNAN, LLP
999 Peachtree Street, N.E.
Atlanta, GA 30309
(404) 853-8188
Email: BENJAMIN.SAWYER@SABLAW.COM

and

Jack Owen   (ASB-4805-N66C)

Jack Owen   (ASB-4805-N66C)
BALL, BALL, MATTHEWS & NOVAK, P.A.
Post Office Box 2148
Montgomery, Alabama  36102-2148
(334) 387-7680
(334) 387-3222 (Fax)
Email: CCOWEN@BALL-BALL.COM

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 11, 2008, I hand filed the foregoing with the Clerk of the Court, and served a copy upon the following listed persons by placing the same in the U. S. Mail, first class postage prepaid and properly addressed:

OF COUNSEL

Mr. Rhon E. Jones
Ms. Scarlette M. Tuley
BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.
P.O. Box 4160
Montgomery, AL 36103-4160
Email:  RHON.JONES@BEASLEYALLEN.COM
Email:  SCARLETTE.TULEY@BEASLEYALLEN.COM


Mr. F. Chadwick Morriss
Rushton, Stakely, Johnston & Garrett, P.A.
Post Office Box 270
Montgomery, AL 36101-0270
Email: fcm@rsjg.com (Morriss)

# EXHIBIT "A"

MERRILL LEGAL SOULTIONS
Court Reporting*Legal Videography*Trial Services

Page 1

1          IN THE UNITED STATES DISTRICT COURT FOR

2              THE MIDDLE DISTRICT OF ALABAMA

3                     NORTHERN DIVISION

4

5    PROFESSIONAL FACILITIES

6    MANAGEMENT, INC.,

7              Plaintiff,

8    vs.                         CIVIL ACTION NO.

9                                2:06CV

10   EMCOR FACILITIES SERVICES,

11   INC.; AND A, B, AND C, AS

12   FICTITIOUS PARTIES,

13          Defendants.

14          *       *       *       *       *

15          DEPOSITION OF JIM WOHLERS,

16   taken pursuant to notice and stipulation

17   on behalf of the Defendant, in the offices

18   of Beasley, Allen, Crow, Methvin, Portis &

19   Miles, 250 Commerce Street, Montgomery,

20   Alabama, before Nicole Paulk, Certified

21   Shorthand Reporter and Notary Public in

22   and for the State of Alabama at Large, on

23   August 10, 2007, commencing at 8:17 a.m.

Page 88

1          when measuring the buildings.

2    Q.    Did you provide a form for subcontractors

3          to report this information on?

4    A.    Yes.

5    Q.    And those have been produced?

6    A.    Yes.

7                    MS. TULEY:  Boxes of those have

8                        been produced.

9                    MR. SAWYER:  My expert's having

10                       lots of fun with that.

11                   THE WITNESS:  I'm sure.

12   Q.    When did the actual measurements start on

13         the BB&T account?

14   A.    I'm not sure of a specific date.  Sometime

15         after start-up.  I think some did occur

16         prior to start-up, because we got our hand

17         slapped for it.

18   Q.    And I believe it's true, is it not, that

19         PFMI didn't actually perform any cleaning,

20         as far as self-performing this work?

21   A.    That's correct.

22   Q.    Okay.  So it was PFMI's job to manage

23         these subcontractors?

Page 89

| | | |
|---|---|---|
| 1 | A. | Yes, sir. |
| 2 | Q. | Okay.  Was that primarily your |
| 3 | | responsibility? |
| 4 | A. | It was primarily Keith Blackburn's |
| 5 | | responsibility for the day-to-day |
| 6 | | management of the subs.  But, you know, we |
| 7 | | had a team of people that managed this |
| 8 | | account. |
| 9 | Q. | Did Keith report to you? |
| 10 | A. | Split between myself and Greg. |
| 11 | Q. | But the buck stopped with you and Greg, |
| 12 | | didn't it? |
| 13 | A. | Yes. |
| 14 | Q. | So I believe your testimony is the subs |
| 15 | | started measuring whenever they got out |
| 16 | | there in September, correct? |
| 17 | A. | Yes.  I couldn't say that they started -- |
| 18 | | the day they started cleaning.  I think |
| 19 | | that would be a bad assumption. |
| 20 | Q. | And the measurement said were supposed to |
| 21 | | be completed in 90 days? |
| 22 | A. | Yes. |
| 23 | Q. | Did that happen? |

# EXHIBIT "B"

**MERRILL LEGAL SOULTIONS**
**Court Reporting*Legal Videography*Trial Services**

```
 1          IN THE UNITED STATES DISTRICT COURT
         FOR THE MIDDLE DISTRICT OF ALABAMA
 2                  NORTHERN DIVISION

 3
     PROFESSIONAL FACILITIES          ORIGINAL
 4   MANAGEMENT, INC.,

 5          Plaintiff,
                                   CASE NUMBER
 6          vs.                    2:06CV1136-MHT

 7   EMCOR FACILITIES SERVICES,
     INC.; and A, B, and C, as
 8   fictitious parties,

 9          Defendants.

10

11      *    *    *    *    *    *    *    *

12

13          DEPOSITION OF GREG LITTLEFIELD,

14   taken pursuant to stipulation and

15   agreement before Barbara A. Howell,

16   Court Reporter and Commissioner for the

17   State of Alabama at Large, in the Law

18   Offices of Beasley, Allen, Crow,

19   Methvin, Portis & Miles, P.C., 250

20   Commerce Street, Montgomery, Alabama, on

21   Thursday, August 9, 2007, commencing at

22   approximately 9:25 a.m.

23
```

**1933 Richard Arrington Jr. blvd, S*Birmingham, AL 35209*www.merrillcorp.com**
**1-800-888-DEPO**

**MERRILL LEGAL SOULTIONS**
**Court Reporting*Legal Videography*Trial Services**

Page 54

```
 1    A.   (Witness nodded.)

 2    Q.   Mr. Clean?

 3    A.   (Witness nodded.)

 4    Q.   FMI?

 5    A.   (Witness nodded.)

 6    Q.   And there could be others; but as you

 7         sit here today, you don't recall

 8         others?

 9    A.   Right.

10    Q.   Did anyone assist you in this endeavor?

11    A.   No.

12    Q.   So Greg Littlefield made all the calls

13         to these people?

14    A.   Yeah.

15    Q.   What time frame were these calls made?

16    A.   I'm assuming it would have been in

17         February-March-April time frame, plus

18         or minus a week or so.

19    Q.   What information did you obtain from

20         them?  And when I say "them," I'm

21         referring to other regional janitorial

22         companies that you contacted.

23    A.   I asked them what type of book of
```

**1933 Richard Arrington Jr. blvd, S*Birmingham, AL 35209*www.merrillcorp.com**
**1-800-888-DEPO**

EXHIBIT "C"

**MERRILL LEGAL SOULTIONS**
Court Reporting*Legal Videography*Trial Services

Page 1

1     IN THE UNITED STATES DISTRICT COURT FOR

2          THE MIDDLE DISTRICT OF ALABAMA

3               NORTHERN DIVISION

4    PROFESSIONAL FACILITIES

5    MANAGEMENT, INC.,                **ORIGINAL**

6          Plaintiff,

7    vs.                        CIVIL ACTION NO.

8                                2:06CV

9    EMCOR FACILITIES SERVICES,

10   INC.; AND A, B, AND C, AS

11   FICTITIOUS PARTIES,

12          Defendants.

13          *     *     *     *     *

14        DEPOSITION OF ELI LARRY CAPILOUTO,

15   taken pursuant to notice and stipulation

16   on behalf of the Defendant, in the offices

17   of Beasley, Allen, Crow, Methvin, Portis &

18   Miles, 250 Commerce Street, Montgomery,

19   Alabama, before Nicole Paulk, Certified

20   Shorthand Reporter and Notary Public in

21   and for the State of Alabama at Large, on

22   September 20, 2007, commencing at 1:35

23   p.m.

2100 3rd Avenue North, Suite 960*Birmingham, AL 35203*www.merrillcorp.com
1-800-888-DEPO

**MERRILL LEGAL SOULTIONS**
**Court Reporting*Legal Videography*Trial Services**

Page 30

1       all been paid.  The payment to Rushton,

2       Stakely, September 30, 2006, in the amount

3       of $1,584.45 -- I do not have a check

4       copy, but there is a notation on the

5       invoice that it was paid by Check Number

6       28407093006.

7   Q.   Are you aware of any provision of the

8       contract between EMCOR and PFMI that

9       provides for recovery of attorney's fees?

10  A.   No, I am not.

11  Q.   Did you make any investigation to

12      determine whether EMCOR agreed to payment

13      of attorney's fees?

14  A.   No, I did not.

15  Q.   Can I ask why you included it in the

16      damages calculation?

17  A.   It was costs that they incurred in working

18      agreements with their subcontractors in

19      suits against them for not paying for the

20      work that they did on the BB&T branches,

21      so therefore, we included it as part of

22      the damage calculation.

23  Q.   All right.  At least in this instance, the

**MERRILL LEGAL SOULTIONS**
**Court Reporting*Legal Videography*Trial Services**

Page 80

1       two or three hundred dollars, which we

2       deemed not material --

3    Q.    Not substantial?

4    A.    -- and did not investigate.

5    Q.    And we've already talked about the trash,

6       right?

7    A.    That's correct.

8    Q.    And as you sit here today, have you -- and

9       there's asterisks by your direct trash

10      removal expenses not recorded, and the

11      asterisk reads, additional trash removal

12      expenses of approximately $88,000 have not

13      been included; will revise to include when

14      documentation is available.  Did I read

15      that correctly?

16   A.    Yes.

17   Q.    Okay.  Next question is, have you received

18      documentation supporting $88,000 for trash

19      removal?

20   A.    Not at this date.

21   Q.    So fair statement, without that supporting

22      documentation, you can't have an opinion

23      on that?

Page 81

1    A.    That's correct.

2    Q.    And as PFMI's corporate representative on

3          damages, you don't have an opinion on that

4          as you sit here today?

5    A.    Well, my opinion is until we -- no, I

6          don't have an opinion on that as we sit

7          here today.

8    Q.    So fair statement, the bottom line number

9          is the actual amount of loss that PFMI

10         contends was incurred on this job from

11         September 2005 through July 2006?  Fair

12         statement?

13   A.    Well, there are other components of the

14         total damages, but as far as the loss,

15         that's correct, 557,128 is the loss.

16   Q.    There wasn't supposed to be anything

17         sneaky about that.

18   A.    Sure.

19   Q.    I'm just reading -- this is the actual

20         loss they contend they sustained?

21   A.    Yes.

22   Q.    And as you go on later in your report,

23          you're also asserting PFMI should have

**MERRILL LEGAL SOULTIONS**
Court Reporting*Legal Videography*Trial Services

Page 118

1   Q.   But as you sit here today, you have not

2         been asked to do any other work on this --

3   A.   No.

4   Q.   I'm going to mark this as an exhibit.

5         I've been informed by counsel that you've

6         never seen it before.

7               MS. TULEY:  I'd like for this to

8                  be sealed.

9               MR. SAWYER:  I have no objection.

10             MS. TULEY:  And to the extent

11                 that any of his testimony or

12                 any of the questions set

13                 forth any of the information

14                 in what you're about to mark

15                 as an exhibit, I'd like that

16                 information sealed as well.

17             MR. SAWYER:  No objection.

18   Q.   You haven't seen this.  I'd like you to

19         take a look at what I've marked as Exhibit

20         94.  Take your time.

21             (The referred-to document was

22             marked for identification as

23             Exhibit No. 94.)

Page 119

1   A.   Okay.  I've read it.

2   Q.   First of all, I'll ask you just for the

3        record whether or not you had seen this

4        document before.

5   A.   No.

6   Q.   All right.  In what way would PFMI's

7        settlement with its subtier vendors impact

8        your opinions, if at all?

9             MS. TULEY:  Object to the form.

10  A.   Well, first I'd have to discuss the legal

11       ramifications and impact of this with

12       their counsel to make a determination as

13       to whether or not that would affect our

14       calculation.

15  Q.   So the first thing you'd want to do is

16       talk to PFMI's lawyer?

17  A.   That's correct.

18  Q.   Fair statement that you wouldn't know how

19       it would affect your opinions, if --

20  A.   That's correct.  And that's in regards to

21       the first letter with FMI, which is

22       different than the other three letters.

23  Q.   Does it appear that the first one is --

# EXHIBIT "D"

Professional Facilities Management, Inc.

vs.

EMCOR Facilities Services, Inc.

Report of Financial Damages

**EXHIBIT**

93

Professional Facilities Management, Inc.

vs.

EMCOR Facilities Services, Inc.

Report of Financial Damages

Professional Facilities Management, Inc.
Report of Financial Damages

INDEX

|  | Page |
|---|---|
| Summary of damages | 3 |
| Loss on job September 2005 through July 2006 | 4 |
| Foregone profit on job September 2005 through July 2006 | 5 |
| Projected future profit | 6 |
| Notes and assumptions | 7 |
| Schedule I, Reconciliation of internal net loss to loss on job | 8 |

Professional Facilities Management, Inc.
Report of Financial Damages

Re:  Summary of damages

| | | |
|---|---|---|
| Loss on Job from September 2005 through July 2006 | $ | 557,128 |
| Foregone profit on job from September 2005 through July 2006 | $ | 419,332 |
| Projected future profit under revised contract terms of of June 1, 2006 through June 30, 2008 | $ | 420,614 |
| Attorney fees related to subcontractor claims | $ | 6,265 |
| Total damages | | $ 1,403,339 |

Professional Facilities Management, Inc.
Report of Financial Damages

Re:  Loss on Job from September 2005 through July 2006

|  | Amount |
|---|---|
| Revenue | $ 6,454,650 |
| Outside services | (5,571,779) |
| Direct labor & material cost | (61,075) |
| Gross profit | 821,796 |
| Direct personnel expenses | (135,583) |
| Other direct expenses | (236,306) |
| Income before adjustments | 449,907 |
| Revenue billed but not collected | (740,340) |
| Direct trash removal expenses not recorded | (236,120) * |
| Additional rent expense | (30,575) |
| Total loss on job from September 2005 through July 2006 | $  (557,128) |

*  Additional trash removal expenses of approximately $88,000 have not been included.
We will revise the loss to include these amounts when documentation is available.

Professional Facilities Management, Inc.
Report of Financial Damages

Re:  Foregone profit on job from September 2005 through July 2006

| | Amount |
|---|---|
| Revenue | $ 6,454,650 |
| Outside services | (5,571,779) |
| Direct labor & material cost | (61,075) |
| Gross profit | 821,796 |
| Direct personnel expenses | (135,583) |
| Other direct expenses | (236,306) |
| Additional rent expense | (30,575) |
| Foregone profit on job | $ 419,332 |

Professional Facilities Management, Inc.
Report of Financial Damages

Re: Projected future profit under revised contract terms of June 1, 2006 through June 30, 2008

| | |
|---|---:|
| Square footage per revised contract | 2,281,688 |
| Average janitorial revenue per square foot | 1.229 |
| Projected future annual revenue | $ 2,804,195 |
| Projected future monthly revenue | 233,683 |
| Remaining contract terms | 24 months |
| Projected remaining future revenue | $ 5,608,389 |
| Less: July 2006 revenue | (83,062) |
| Projected future revenue | 5,525,327 |
| Projected outside services | (4,769,569) |
| Projected direct labor & material cost | (52,282) |
| Projected gross profit | 703,476 |
| Projected direct personnel expenses | (116,062) |
| Projected other direct expenses | (166,800) |
| Projected net income | $ 420,614 |

Professional Facilities Management, Inc.
Report of Financial Damages

NOTES AND ASSUMPTIONS:

1. Loss on job from September 2005 through July 2006 - The loss was computed using internally prepared financial statements. Included are all directly related expenses, which consist of outside services, direct materials and labor, direct personnel expenses and other direct expenses. Testing was performed to satisfy with reasonable assurance that expenses were properly charged. No allocation of indirect overhead was deducted. Revenue per the internal financial statements included amounts billed but not collected. Revenue was reduced by this amount to calculate the loss on job. The additional trash removal expenses shown were not expensed in the internal financial statements. Additional rent expense represents the remaining rent due under a three-year lease for office space specifically for this job.

2. Foregone profit on job from September 2005 through July 2006 - This amount represents the profit that would have been made if the accounts receivable were collected and the unexpected trash removal expenses were not incurred.

3. Projected future profit - This amount was based on actual square footage per the revised contract terms of June 1, 2006 through June 30, 2008. The actual square footage per month for 24 months times the average janitorial revenue per square foot used in the original Bid package was calculated. Expenses were calculated based on historical percentages. Office furniture and fixtures, special programming fees, and additional office rent were non-recurring expenses and were not included in the historical percentages. The projected net income appears reasonable based on the calculations and historical trend analysis.

4. Schedule I - Reconciliation of internal net loss to loss on job - This reconciliation includes the net loss per the internally prepared financial statements and the indirect overhead not deducted in the loss on job calculation.

-7-

Professional Facilities Management, Inc.
Report of Financial Damages

Schedule I:  Reconciliation of Internal Net Loss to Loss on Job

| | |
|---|---:|
| Internal net loss | $(199,721) |
| General overhead | 649,628 |
| Income before adjustments | 449,907 |
| Revenue billed but not collected | (740,340) |
| Direct trash removal expenses not recorded | (236,120) |
| Additonal rent expense | (30,575) |
| Total loss on job from September 2005 through July 2006 | $(557,128) |