IN THE UNITED STATES DISTRICT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| PROFESSIONAL FACILITIES MANAGEMENT, INC., | § § § | |
| **Plaintiff,** | § § | |
| v. | § § § | CIVIL ACTION NO: <u>2:06CV1136-MHT</u> |
| EMCOR FACILITIES SERVICES, INC.; and A, B, and C, as fictitious parties, | § § § § | |
| **Defendants.** | § § | |

## PFMI'S RESPONSE IN OPPOSITION TO EMCOR'S SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT

Comes now Plaintiff, Professional Facilities Management, Inc. ("PFMI") in opposition to Defendant's Motion for Partial Summary Judgment and shows the Court as follows:

### I.    Factual Background and Introduction

This action arises out of EMCOR's refusal to pay PFMI for janitorial work performed at BB&T branch banks.  EMCOR had a contract to provide janitorial services to the branches and subcontracted with PFMI for all the scope of work.  PFMI supervised a large number of subcontractors in performing the cleaning.  EMCOR initially withheld a portion of PFMI's invoices and then eventually stopped paying invoices all together.

PFMI has incurred significant losses as a result of EMCOR'S withholding of payments. PFMI had to pay its thirty or so subcontractors out of its own pocket to avoid litigation.  PFMI incurred expenses associated with its role as janitorial prime contractor that were not reimbursed. PFMI also lost profit due to EMCOR's failure to pay.

### II.    Statement of Undisputed Material Facts

A.    PFMI was responsible for payments to many more subcontractors than the three referenced by defendants.  In fact, PFMI utilized 30 subcontractors on the EMCOR project.  See Deposition Exhibit 29, Exhibit A hereto and Jim Wohlers Deposition page 153 line 18 through page 154 line 11, Exhibit B hereto.

"Q.    ...Could you identify what's been marked as 29?...

A.    Yes.  It's a vendor report.

....

Q.    Are all those vendors solely BB&T account vendors?

A.    Yes, they appear to be.

Q.    All of them?

A.    Yes, I believe so."

B.    PFMI incurred direct expenses related to the project in addition to the amounts paid in settlement to the three subcontractors referenced by defendants.  In the beginning of the project PFMI had five or six employees dedicated to EMCOR.  Staffing later grew to include personnel dedicated to night work orders and personnel stationed at BB&T's headquarters.  See Deposition of Jim Wohlers page 117 lines 4 through 9, 19 through page 118 line 17 and page 120 lines 1 through 4, Exhibit B hereto.

"Q.    At this time, what was your staff?

A.    For administrative staff or field staff?

Q.    All staff.

A.    Dedicated to BB&T?

Q.    Dedicated to BB&T.

A.    Five or -- five, maybe six.

...

Q.    Over the course of performance of the project, did PFMI ever increase staff?

A.    Yes.

Q.    Okay.  Who did you hire on?

A.    We hired -- ...Vince Sabatine, ..., to manage work orders at night.

....

Q.    And how would he handle work orders at night?

A.    After normal business hours.  I think his hours were 4 to midnight, something like that.
      He and Mike Cleary and Keith would sort of have a transition conference call and open
      work orders that were a priority for that night....

...

A.    ...We added Nicole Cruise -- ... --in the BB&T office in Winston-Salem to sort of be a
      daily contact right there."

C.    PFMI anticipated a gross profit between $.18 and $.21 per square foot.  See

Deposition Exhibit 28, Supplemental Interrogatory Responses at number 12, Exhibit C hereto.

Deposition of Larry Capilouto page 89 line 10 through 19, Exhibit D hereto.

"Q.    Okay.  If you'll turn to Page 5 of your report, could you explain to me how you arrived at
       the, quote, foregone profit on job from September 2005 through July 2006?

A.     The calculation of the profit that resulted – that would have resulted had we been paid the
       full amount of the invoices that we had submitted.  So that would have been the
       collection of the $740,340, ..."

D.    PFMI's damages of $976,460.00 include amounts more than the $343,932.11 as

represented by defendants in their brief.  Deposition of Larry Capilouto page 54 lines 2 through

10, page 56 lines 9 through 23, page 61 line 7 through page 62 line 4, page 64 lines 10 through

21, page 69 line 23 through page 70 line 19, page 71 lines 7 through 15, page 72 lines 12 through

19, Exhibit D hereto; Affidavit of Larry Capilouto, Exhibit E hereto.

"Q.    Let's take a look at the – what part of PFMI's damages are cost-incurred by a lease agreement?

A.    That would be rent expense.

Q.    Okay. Any why is that a part of PFMI's damages?

A.    They entered into a lease for additional space in order to accommodate the additional personnel.

---

Q.    …[W]hat amount of the lease is being claimed as damages against my client?

A.    The cost that we incurred to the date of July '06 when they discontinued the service, and then for the remaining term of the lease. And that additional rent expense was $30,575.

Q.    Now, is that part of the damages that are being asserted against my client, or is that an overhead cost?

A.    That's correct. That's part of the damages, because that space was specifically rented for the conduct of this project.

…

Q.    What are direct labor and material costs? What are you aware of that was direct labor and material?

A.    That information was pulled from their internal financial statements as it related to this job, and it appears that that was some other labor and also some cleaning supply expenses.

Q.    And I believe you just testified it was other labor and other material?

A.    Correct.

Q.    And if you'll refer to Exhibit 90. I believe you're looking at the same thing I am. Could you show me where you are?

A.    Yes. It's the total direct labor and material cost, and it would be this number for this period of time, from March – January '06 through July'06, plus the direct – total direct and labor material cost of 12,464 for the period September '05 through December 31 '05.

…

Q.    So you examined PFMI's invoices?

4

A.    We examined the vendors' invoices.

Q.    You examined the vendors' invoices?

A.    That's correct.  The total invoices that we vouched for 2005 and 2006 totaled 4,116,357, which was 73.88 percent of the total expenses.  And we found no exceptions.

Q.    So as I understand your testimony, you examined $4 million worth of subcontractor invoices.

A.    That's correct.

…

Q.    What are direct personal expenses?

A.    Expenses of staff that were directly – that performed services and work on this job.

Q.    Is that salary?

A.    Yes, salary and benefits.

Q.    Does that include payment of officers and directors of the corporation?

A.    No.

Q.    So it's the burden labor of PFMI's employees?

A.    That's correct.

Q.    Do you know how many employees they had on this job?

A.    Two

Q.    Who were those?

A.    Keith Blackburn and Ken Law.

Q.    And this number would represent their salaries?

A.    Salaries, payroll tax expense.

…

A.    Right.  That's the trend income statement, personnel expenses, total personnel expenses of 47,485 on the December 31, '05 statement and the $88,098 on the December 31, '06 statement, for a total of 135,583.

Q.    Which would include payroll bonuses, labor burden, uniforms, and holiday pay, correct?

A.    Correct.

…

Q.    Okay.  Moving down to other direct expenses, what are those?

A.    Those are reflected on the trend income statements and are included in the semi-fixed expenses category, which includes vehicle expenses, office supplies, other expense, telephone expense, advertising, data processing --

## III.    Standard of Review

Summary judgment is appropriate only if the evidence presented shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323.  The movant must meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id* at 322-23.

If the moving party meets its burden the burden then shifts to the nonmoving party to go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. *Id* at 324.  The court must believe the evidence of the non-movant and must draw all justifiable

inferences from the evidence in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## IV.    Summary of Argument

Plaintiff's brief only addresses Defendant's first argument "[p]laintiff's settlement of its potential liability to "All" subcontractors limits PFMI's recovery for these claims in this action." Plaintiff concedes that summary judgment should be granted as to its claims for attorneys fees and the $88,000 for "additional trash removal expense."

### A.    EMCOR has not proven that PFMI's recovery should be limited.

EMCOR bases its argument on assumptions that the three agreements identified in Deposition Exhibit 94 are the universe of payments made by PFMI to its subcontractors. The evidence shows that those three agreements resolved the final outstanding liability PFMI had to its subcontractors. PFMI paid subcontractors other than the three identified in Exhibit 94 for a sum in excess of the $343,932.11. See Ex. E, Affidavit of Larry Capilouto. EMCOR does not provide any expert analysis to dispute Plaintiff's expert's damage calculation. The record is replete with evidence, as indicated in the Undisputed Material Facts, that PFMI was responsible to dozens of subcontractors for payment of work performed. Without further evidence EMCOR has not bourn its burden of proof.

EMCOR's argument ignores PFMI's expenses associated with their work on the contract including five or six supervisors, personnel to handle billing and a dedicated 24 work order call center. See Undisputed Facts B. Nor does EMCOR address Plaintiff's claim for lost profits. EMCOR is attempting to reframe Plaintiff's claim as simply a pass through of money owed to subcontractors while ignoring, money already paid to subcontractors, PFMI's expenses and PFMI's profit.

**B.    *Claussen* does not apply.**

EMCOR relies on *Department of Transportation v. Claussen* for the proposition that PFMI's damages must be limited.  This argument fails for four reasons.  First *Claussen*, a Georgia Court of Appeals case, is not persuasive authority in Alabama.    Second, courts addressing the issue of pass through have declined to follow *Claussen*.  *Interstate Contracting Corp. v. City of Dallas*, 135 S.W. 3d 605, 614 (Tex. 2004)(Distinguishing *Claussen* for its rejection of "the federal courts' requirement that the government/owner bear the burden of disproving the contractor's continued liability to the subcontractor."); *Frank Briscoe Co., Inc. v. County of Clark*, 772 F.Supp 513, 517 (D. Nev. 1991)(Holding *Claussen* runs counter to federal and state case law and as such is not persuasive authority.)  Third, *Claussen* is distinguishable because PFMI's claims are not merely for the losses suffered by their subcontractors.  See Undisputed Facts B, C and D.  The *Claussen* plaintiff's only damages supported by the transcript were losses incurred by its subcontractors.  *Claussen* at 164.  PFMI's record is replete with claims for damages in addition to those amounts in the three releases relied upon by defendants.  Fourth, the *Claussen* court is in the minority as it declined to adopt the federal approach to the pass through issue.  *Claussen* at 164.  Federal Courts narrowly read exculpatory language provisions in contracts between contractors and subcontractors and further have shifted the burden to the defendant.  *Interstate* at 613 (citing *Blount Bros. Constr. Co. v. United States*, 346 F.2d 962 (1965); *W.G.Yates & Sons Constr. Co. v. Caldera*, 192 F.3d 987 (Fed. Cir. 1999); *E.R. Mitchell Constr. Co. v. Danzig*, 175 F.3d 1369 (Fed. Cir. 1999); further citations omitted).

**V.    Conclusion**

EMCOR has not met its burden with regard to limiting plaintiffs damages.  Based on the above, there is a genuine issue of material fact as to whether the three releases relied upon by

EMCOR constitute the universe of payments made to subcontractors by PFMI which EMCOR did not reimburse. EMCOR has not established that "pass-through" payments to subcontractors are all that compromise Plaintiff's $976,460.00 in damages. Plaintiff has provided sufficient evidence to establish that there are a great many additional elements of damages included in that amount. Defendant's motion to reduce Plaintiff's damages to $343,932.11 should be denied.

s/ Scarlette M. Tuley
Rhon E. Jones (JON093)
Scarlette M. Tuley (TUL007)
Attorney for Plaintiff

OF COUNSEL:
BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.
Post Office 4160
Montgomery, Alabama 36103-4160
Phone: (333) 269-2343
Fax: (334) 954-7555

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing document upon all counsel of record as listed below either by virtue of electronic filing or by placing a copy of same in the United States Mail, first class, postage prepaid, a true and correct copy of the above and foregoing document on this the 28th day of February, 2008.

s/ Scarlette M. Tuley_____
OF COUNSEL

Mr. Jack Owen
Ball, Ball, Matthews & Novak, PA
Post Office Box 2148
Montgomery, Alabama 36102-2148
ccowen@ball-ball.com

Mr. Benjamin H. Sawyer
Mr. Lee C. Davis
Sutherland, Asbill & Brennan, LLP
999 Peachtree Street, NE
Atlanta, Georgia 30309
(404) 853-8188
ben.sawyer@sablaw.com
lee.davis@sablaw.com

F. Chadwick Morriss
Rushton, Stakely, Johnston & Garrett, P.A.
Post Office Box 270
Montgomery, Alabama 36101-3100
(334) 206-3100
fcm@rsjg.com

# EXHIBIT "A"

MERRILL LEGAL SOULTIONS
Court Reporting*Legal Videography*Trial Services

Page 1

1        IN THE UNITED STATES DISTRICT COURT FOR

2           THE MIDDLE DISTRICT OF ALABAMA

3                  NORTHERN DIVISION

4

5    PROFESSIONAL FACILITIES

6    MANAGEMENT, INC.,

7              Plaintiff,

8    vs.                      CIVIL ACTION NO.

9                             2:06CV

10   EMCOR FACILITIES SERVICES,

11   INC.; AND A, B, AND C, AS

12   FICTITIOUS PARTIES,

13            Defendants.

14         *     *     *     *     *

15         DEPOSITION OF JIM WOHLERS,

16   taken pursuant to notice and stipulation

17   on behalf of the Defendant, in the offices

18   of Beasley, Allen, Crow, Methvin, Portis &

19   Miles, 250 Commerce Street, Montgomery,

20   Alabama, before Nicole Paulk, Certified

21   Shorthand Reporter and Notary Public in

22   and for the State of Alabama at Large, on

23   August 10, 2007, commencing at 8:17 a.m.



MERRILL LEGAL SOULTIONS
Court Reporting*Legal Videography*Trial Services

Page 88

```
1              when measuring the buildings.

2     Q.       Did you provide a form for subcontractors

3              to report this information on?

4     A.       Yes.

5     Q.       And those have been produced?

6     A.       Yes.

7                       MS. TULEY:  Boxes of those have

8                       been produced.

9                       MR. SAWYER:  My expert's having

10                      lots of fun with that.

11                      THE WITNESS:  I'm sure.

12    Q.       When did the actual measurements start on

13             the BB&T account?

14    A.       I'm not sure of a specific date.  Sometime

15             after start-up.  I think some did occur

16             prior to start-up, because we got our hand

17             slapped for it.

18    Q.       And I believe it's true, is it not, that

19             PFMI didn't actually perform any cleaning,

20             as far as self-performing this work?

21    A.       That's correct.

22    Q.       Okay.  So it was PFMI's job to manage

23             these subcontractors?
```

Page 89

| | | |
|---|---|---|
| 1 | A. | Yes, sir. |
| 2 | Q. | Okay. Was that primarily your |
| 3 | | responsibility? |
| 4 | A. | It was primarily Keith Blackburn's |
| 5 | | responsibility for the day-to-day |
| 6 | | management of the subs. But, you know, we |
| 7 | | had a team of people that managed this |
| 8 | | account. |
| 9 | Q. | Did Keith report to you? |
| 10 | A. | Split between myself and Greg. |
| 11 | Q. | But the buck stopped with you and Greg, |
| 12 | | didn't it? |
| 13 | A. | Yes. |
| 14 | Q. | So I believe your testimony is the subs |
| 15 | | started measuring whenever they got out |
| 16 | | there in September, correct? |
| 17 | A. | Yes. I couldn't say that they started -- |
| 18 | | the day they started cleaning. I think |
| 19 | | that would be a bad assumption. |
| 20 | Q. | And the measurement said were supposed to |
| 21 | | be completed in 90 days? |
| 22 | A. | Yes. |
| 23 | Q. | Did that happen? |

# EXHIBIT "B"

MERRILL LEGAL SOULTIONS
Court Reporting*Legal Videography*Trial Services

1   IN THE UNITED STATES DISTRICT COURT
    FOR THE MIDDLE DISTRICT OF ALABAMA
2              NORTHERN DIVISION

3

PROFESSIONAL FACILITIES            ORIGINAL
4   MANAGEMENT, INC.,

5       Plaintiff,
                                CASE NUMBER
6       vs.                     2:06CV1136-MHT

7   EMCOR FACILITIES SERVICES,
    INC.; and A, B, and C, as
8   fictitious parties,

9       Defendants.

10

11    *    *    *    *    *    *    *    *

12

13       DEPOSITION OF GREG LITTLEFIELD,

14   taken pursuant to stipulation and

15   agreement before Barbara A. Howell,

16   Court Reporter and Commissioner for the

17   State of Alabama at Large, in the Law

18   Offices of Beasley, Allen, Crow,

19   Methvin, Portis & Miles, P.C., 250

20   Commerce Street, Montgomery, Alabama, on

21   Thursday, August 9, 2007, commencing at

22   approximately 9:25 a.m.

23

**MERRILL LEGAL SOULTIONS**
**Court Reporting\*Legal Videography\*Trial Services**

Page 54

1   A.   (Witness nodded.)

2   Q.   Mr. Clean?

3   A.   (Witness nodded.)

4   Q.   FMI?

5   A.   (Witness nodded.)

6   Q.   And there could be others; but as you

7        sit here today, you don't recall

8        others?

9   A.   Right.

10  Q.   Did anyone assist you in this endeavor?

11  A.   No.

12  Q.   So Greg Littlefield made all the calls

13       to these people?

14  A.   Yeah.

15  Q.   What time frame were these calls made?

16  A.   I'm assuming it would have been in

17       February-March-April time frame, plus

18       or minus a week or so.

19  Q.   What information did you obtain from

20       them?  And when I say "them," I'm

21       referring to other regional janitorial

22       companies that you contacted.

23  A.   I asked them what type of book of

# EXHIBIT "C"

MERRILL LEGAL SOULTIONS
Court Reporting*Legal Videography*Trial Services

Page 1

1        IN THE UNITED STATES DISTRICT COURT FOR

2            THE MIDDLE DISTRICT OF ALABAMA

3                  NORTHERN DIVISION

4    PROFESSIONAL FACILITIES

5    MANAGEMENT, INC.,                **ORIGINAL**

6            Plaintiff,

7    vs.                         CIVIL ACTION NO.

8                                2:06CV

9    EMCOR FACILITIES SERVICES,

10   INC.; AND A, B, AND C, AS

11   FICTITIOUS PARTIES,

12            Defendants.

13            *     *     *     *     *

14       DEPOSITION OF ELI LARRY CAPILOUTO,

15   taken pursuant to notice and stipulation

16   on behalf of the Defendant, in the offices

17   of Beasley, Allen, Crow, Methvin, Portis &

18   Miles, 250 Commerce Street, Montgomery,

19   Alabama, before Nicole Paulk, Certified

20   Shorthand Reporter and Notary Public in

21   and for the State of Alabama at Large, on

22   September 20, 2007, commencing at 1:35

23   p.m.

2100 3rd Avenue North, Suite 960*Birmingham, AL 35203*www.merrillcorp.com
1-800-888-DEPO

Page 30

1        all been paid.  The payment to Rushton,

2        Stakely, September 30, 2006, in the amount

3        of $1,584.45 -- I do not have a check

4        copy, but there is a notation on the

5        invoice that it was paid by Check Number

6        28407093006.

7    Q.    Are you aware of any provision of the

8        contract between EMCOR and PFMI that

9        provides for recovery of attorney's fees?

10   A.    No, I am not.

11   Q.    Did you make any investigation to

12       determine whether EMCOR agreed to payment

13       of attorney's fees?

14   A.    No, I did not.

15   Q.    Can I ask why you included it in the

16       damages calculation?

17   A.    It was costs that they incurred in working

18       agreements with their subcontractors in

19       suits against them for not paying for the

20       work that they did on the BB&T branches,

21       so therefore, we included it as part of

22       the damage calculation.

23   Q.    All right.  At least in this instance, the

MERRILL LEGAL SOULTIONS
Court Reporting*Legal Videography*Trial Services

Page 80

```
 1            two or three hundred dollars, which we

 2            deemed not material --

 3    Q.      Not substantial?

 4    A.      -- and did not investigate.

 5    Q.      And we've already talked about the trash,

 6            right?

 7    A.      That's correct.

 8    Q.      And as you sit here today, have you -- and

 9            there's asterisks by your direct trash

10            removal expenses not recorded, and the

11            asterisk reads, additional trash removal

12            expenses of approximately $88,000 have not

13            been included; will revise to include when

14            documentation is available.  Did I read

15            that correctly?

16    A.      Yes.

17    Q.      Okay.  Next question is, have you received

18            documentation supporting $88,000 for trash

19            removal?

20    A.      Not at this date.

21    Q.      So fair statement, without that supporting

22            documentation, you can't have an opinion

23            on that?
```

2100 3rd Avenue North, Suite 960*Birmingham, AL 35203*www.merrillcorp.com
1-800-888-DEPO

Page 81

1   A.   That's correct.

2   Q.   And as PFMI's corporate representative on

3        damages, you don't have an opinion on that

4        as you sit here today?

5   A.   Well, my opinion is until we -- no, I

6        don't have an opinion on that as we sit

7        here today.

8   Q.   So fair statement, the bottom line number

9        is the actual amount of loss that PFMI

10       contends was incurred on this job from

11       September 2005 through July 2006?  Fair

12       statement?

13  A.   Well, there are other components of the

14       total damages, but as far as the loss,

15       that's correct, 557,128 is the loss.

16  Q.   There wasn't supposed to be anything

17       sneaky about that.

18  A.   Sure.

19  Q.   I'm just reading -- this is the actual

20       loss they contend they sustained?

21  A.   Yes.

22  Q.   And as you go on later in your report,

23       you're also asserting PFMI should have

MERRILL LEGAL SOULTIONS
Court Reporting*Legal Videography*Trial Services

Page 118

1    Q.    But as you sit here today, you have not

2          been asked to do any other work on this --

3    A.    No.

4    Q.    I'm going to mark this as an exhibit.

5          I've been informed by counsel that you've

6          never seen it before.

7                MS. TULEY:  I'd like for this to

8                   be sealed.

9                MR. SAWYER:  I have no objection.

10               MS. TULEY:  And to the extent

11                  that any of his testimony or

12                  any of the questions set

13                  forth any of the information

14                  in what you're about to mark

15                  as an exhibit, I'd like that

16                  information sealed as well.

17               MR. SAWYER:  No objection.

18   Q.    You haven't seen this.  I'd like you to

19         take a look at what I've marked as Exhibit

20         94.  Take your time.

21               (The referred-to document was

22                  marked for identification as

23                  Exhibit No. 94.)

2100 3rd Avenue North, Suite 960*Birmingham, AL 35203*www.merrillcorp.com
1-800-888-DEPO

MERRILL LEGAL SOULTIONS
Court Reporting*Legal Videography*Trial Services

Page 119

1    A.    Okay.  I've read it.

2    Q.    First of all, I'll ask you just for the

3          record whether or not you had seen this

4          document before.

5    A.    No.

6    Q.    All right.  In what way would PFMI's

7          settlement with its subtier vendors impact

8          your opinions, if at all?

9              MS. TULEY:  Object to the form.

10   A.    Well, first I'd have to discuss the legal

11         ramifications and impact of this with

12         their counsel to make a determination as

13         to whether or not that would affect our

14         calculation.

15   Q.    So the first thing you'd want to do is

16         talk to PFMI's lawyer?

17   A.    That's correct.

18   Q.    Fair statement that you wouldn't know how

19         it would affect your opinions, if --

20   A.    That's correct.  And that's in regards to

21         the first letter with FMI, which is

22         different than the other three letters.

23   Q.    Does it appear that the first one is --

# EXHIBIT "D"

Professional Facilities Management, Inc.

vs.

EMCOR Facilities Services, Inc.

Report of Financial Damages

**EXHIBIT**

93

Professional Facilities Management, Inc.

vs.

EMCOR Facilities Services, Inc.

Report of Financial Damages

Professional Facilities Management, Inc.
Report of Financial Damages

INDEX

|                                                                      | Page |
|----------------------------------------------------------------------|------|
| Summary of damages                                                   | 3    |
| Loss on job September 2005 through July 2006                          | 4    |
| Foregone profit on job September 2005 through July 2006              | 5    |
| Projected future profit                                              | 6    |
| Notes and assumptions                                                | 7    |
| Schedule I, Reconciliation of internal net loss to loss on job      | 8    |

Professional Facilities Management, Inc.
Report of Financial Damages

Re:  Summary of damages

| | | |
|---|---|---|
| Loss on Job from September 2005 through July 2006 | $ | 557,128 |
| Foregone profit on job from September 2005 through July 2006 | $ | 419,332 |
| Projected future profit under revised contract terms of of June 1, 2006 through June 30, 2008 | $ | 420,614 |
| Attorney fees related to subcontractor claims | $ | 6,265 |
| Total damages | | $ 1,403,339 |

Professional Facilities Management, Inc.
Report of Financial Damages

Re: Loss on Job from September 2005 through July 2006

|  | Amount |
|---|---|
| Revenue | $ 6,454,650 |
| Outside services | (5,571,779) |
| Direct labor & material cost | (61,075) |
| Gross profit | 821,796 |
| Direct personnel expenses | (135,583) |
| Other direct expenses | (236,306) |
| Income before adjustments | 449,907 |
| Revenue billed but not collected | (740,340) |
| Direct trash removal expenses not recorded | (236,120) * |
| Additional rent expense | (30,575) |
| Total loss on job from September 2005 through July 2006 | $ (557,128) |

\* Additional trash removal expenses of approximately $88,000 have not been included.
We will revise the loss to include these amounts when documentation is available.

-4-

Professional Facilities Management, Inc.
Report of Financial Damages

Re:  Foregone profit on job from September 2005 through July 2006

| | Amount |
|---|---|
| Revenue | $ 6,454,650 |
| Outside services | (5,571,779) |
| Direct labor & material cost | (61,075) |
| Gross profit | 821,796 |
| Direct personnel expenses | (135,583) |
| Other direct expenses | (238,306) |
| Additional rent expense | (30,575) |
| Foregone profit on job | $    419,332 |

Professional Facilities Management, Inc.
Report of Financial Damages

Re: Projected future profit under revised contract terms of June 1, 2006 through June 30, 2008

| | |
|---|---:|
| Square footage per revised contract | 2,281,688 |
| Average janitorial revenue per square foot | 1.229 |
| Projected future annual revenue | $ 2,804,195 |
| Projected future monthly revenue | 233,683 |
| Remaining contract terms | 24 months |
| Projected remaining future revenue | $ 5,608,389 |
| Less: July 2006 revenue | (83,062) |
| Projected future revenue | 5,525,327 |
| Projected outside services | (4,769,569) |
| Projected direct labor & material cost | (52,282) |
| Projected gross profit | 703,476 |
| Projected direct personnel expenses | (116,062) |
| Projected other direct expenses | (166,800) |
| Projected net income | $ 420,614 |

Professional Facilities Management, Inc.
Report of Financial Damages

NOTES AND ASSUMPTIONS:

1.  Loss on job from September 2005 through July 2006 - The loss was computed using internally prepared financial statements. Included are all directly related expenses, which consist of outside services, direct materials and labor, direct personnel expenses and other direct expenses. Testing was performed to satisfy with reasonable assurance that expenses were properly charged. No allocation of indirect overhead was deducted. Revenue per the internal financial statements included amounts billed but not collected. Revenue was reduced by this amount to calculate the loss on job. The additional trash removal expenses shown were not expensed in the internal financial statements. Additional rent expense represents the remaining rent due under a three-year lease for office space specifically for this job.

2.  Foregone profit on job from September 2005 through July 2006 - This amount represents the profit that would have been made if the accounts receivable were collected and the unexpected trash removal expenses were not incurred.

3.  Projected future profit - This amount was based on actual square footage per the revised contract terms of June 1, 2006 through June 30, 2008. The actual square footage per month for 24 months times the average janitorial revenue per square foot used in the original Bid package was calculated. Expenses were calculated based on historical percentages. Office furniture and fixtures, special programming fees, and additional office rent were non-recurring expenses and were not included in the historical percentages. The projected net income appears reasonable based on the calculations and historical trend analysis.

4.  Schedule I - Reconciliation of internal net loss to loss on job - This reconciliation includes the net loss per the internally prepared financial statements and the indirect overhead not deducted in the loss on job calculation.

Professional Facilities Management, Inc.
Report of Financial Damages

Schedule I: Reconciliation of Internal Net Loss to Loss on Job

| | |
|---|---:|
| Internal net loss | $ (199,721) |
| General overhead | 649,628 |
| Income before adjustments | 449,907 |
| Revenue billed but not collected | (740,340) |
| Direct trash removal expenses not recorded | (236,120) |
| Additonal rent expense | (30,575) |
| Total loss on job from September 2005 through July 2006 | $ (557,128) |

# EXHIBIT "E"

IN THE UNITED STATES DISTRICT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| PROFESSIONAL FACILITIES<br>MANAGEMENT, INC.,<br><br>        **Plaintiff,**<br><br>v.<br><br>EMCOR FACILITIES SERVICES,<br>INC.; and A, B, and C, as fictitious<br>parties,<br><br>        **Defendants.** | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO: <u>2:06CV1136-MHT</u> |

## AFFIDAVIT OF LARRY CAPILOUTO

Before me, the undersigned authority, personally appeared E. Larry Capilouto, who after being duly sworn, deposes and states as follows:

1.    My name is Larry Capilouto. I am over the age of eighteen (18), suffer no legal disability and am otherwise competent to make this Affidavit.

2.    I am a certified public accountant and have previously made an expert report in this matter and been deposed.

3.    Bern, Butler, Capilouto & Massey, P.C.'s report of Financial Damages to PFMI included the expenses for janitorial services provided by subcontractors.

4.    There are subcontractor costs included as expenses that were unpaid and reflected on PFMI's financial statement as accounts payable.

5.    If PFMI's liability is found to be less than the amount reflected in accounts payable the computation of financial damages would be adjusted for the decrease in the cost for the subcontract services.

6.    The financial damages should not be reduced to the settlement amount agreed to with the subcontractors as stated in the motion of partial summary judgment in the amount of $343,932.11.

Further Affiant Sayeth Not

E. Larry Capilouto

Subscribed and Sworn

Before Me on This the

28th Day of February, 2008

Jean F. Chavez

Notary Public

My Commission Expires:

5/5/2010

